# REED ET AL. v. ROSS

No. 83–218.  Argued March 27, 1984—Decided June 27, 1984

1

BRENNAN, J., delivered the opinion of the Court, in which WHITE, MARSHALL, POWELL, and STEVENS, JJ., joined. POWELL, J., filed a concurring opinion, *post*, p. 20. REHNQUIST, J., filed a dissenting opinion, in which BURGER, C. J., and BLACKMUN and O'CONNOR, JJ., joined, *post*, p. 21.

*Richard N. League*, Special Deputy Attorney General of North Carolina, argued the cause for petitioners. With him on the brief was *Rufus L. Edmisten*, Attorney General.

*Edwin Kneedler* argued the cause for the United States as *amicus curiae* urging reversal. On the brief were *Solicitor General Lee, Assistant Attorney General Trott, Deputy Solicitor General Frey, John H. Garvey*, and *Louis M. Fischer*.

*Barry Nakell*, by appointment of the Court, 464 U. S. 1036, argued the cause and filed a brief for respondent.

JUSTICE BRENNAN delivered the opinion of the Court.

In March 1969, respondent Daniel Ross was convicted of first-degree murder in North Carolina and sentenced to life imprisonment. At trial, Ross had claimed lack of malice and self-defense. In accordance with well-settled North Carolina law, the trial judge instructed the jury that Ross, the defendant, had the burden of proving each of these defenses. Six years later, this Court decided *Mullaney* v. *Wilbur*, 421 U. S. 684 (1975), which struck down, as violative of due process, the requirement that the defendant bear the burden of proving lack of malice. *Id.*, at 704. Two years later, *Hankerson* v. *North Carolina*, 432 U. S. 233 (1977), held that *Mullaney* was to have retroactive application. The question presented in this case is whether Ross' attorney forfeited Ross' right to relief under *Mullaney* and *Hankerson* by failing, several years before those cases were decided, to raise on appeal the unconstitutionality of the jury instruction on the burden of proof.

I

A

In 1970, this Court decided *In re Winship*, 397 U. S. 358, the first case in which we directly addressed the constitutional foundation of the requirement that criminal guilt be established beyond a reasonable doubt. That case held that "[l]est there remain any doubt about the constitutional stature of the reasonable-doubt standard, . . . the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Id.*, at 364.

Five years after *Winship*, the Court applied the principle to the related question of allocating burdens of proof in a criminal case. *Mullaney* v. *Wilbur, supra*. *Mullaney* arose in the context of a Maine statute providing that "[w]hoever unlawfully kills a human being with malice aforethought, either express or implied, is guilty of murder and

shall be punished by imprisonment for life." *Id.*, at 686, n. 3. The trial judge had instructed the jury under this statute that "if the prosecution established that the homicide was both intentional and unlawful, malice aforethought was to be conclusively implied unless the defendant proved by a fair preponderance of the evidence that he acted in the heat of passion on sudden provocation."[1] *Id.*, at 686. Thus, despite the fact that malice was an element of the offense of murder, the law of Maine provided that, if the defendant contended that he acted without malice, but rather "in the heat of passion on sudden provocation," he, not the prosecution, was required to bear the burden of persuasion by a "fair preponderance of the evidence." *Ibid.* Noting that "[t]he result, in a case such as this one where the defendant is required to prove the critical fact in dispute, is to increase further the likelihood of an erroneous murder conviction," *id.*, at 701, *Mullaney* held that due process requires the prosecution to bear the burden of persuasion with respect to each element of a crime.

Finally, *Hankerson* v. *North Carolina, supra,* held that *Mullaney* was to have retroactive application. In reaching this conclusion, the Court followed *Ivan V.* v. *City of New York,* 407 U. S. 203 (1972), which had held that *Winship* was retroactively applicable. Quoting *Ivan V.* and *Winship,* the Court stated:

> " 'The [reasonable-doubt] standard provides concrete substance for the presumption of innocence—that bedrock "axiomatic and elementary" principle whose "enforcement lies at the foundation of the administration of our criminal law". . . . "Due process commands that no

---

[1] As the Court in *Mullaney* explained, the trial court "emphasized that 'malice aforethought and heat of passion on sudden provocation are two inconsistent things' . . . ; thus by proving the latter the defendant would negate the former and reduce the homicide from murder to manslaughter." 421 U. S., at 686–687.

man shall lose his liberty unless the Government has borne its burden of . . . convincing the factfinder of his guilt." To this end, the reasonable-doubt standard is indispensable, for it "impresses on the trier of fact the necessity of reaching a subjective state of certitude of the facts in issue."'" *Hankerson, supra,* at 241 (quoting *Ivan V., supra,* at 204–205 (quoting *Winship, supra,* at 363–364)).

*Hankerson* further stated that, regardless of the administrative costs involved in the retroactive application of a new constitutional doctrine, "'[w]here the *major* purpose of new constitutional doctrine is to overcome an aspect of the criminal trial that *substantially* impairs its truth-finding function and so raises *serious* questions about the accuracy of guilty verdicts in past trials, the new rule [is] given complete retroactive effect.'" 432 U. S., at 243 (quoting *Ivan V., supra,* at 204) (emphasis in original). In this case, we are called upon again, in effect, to revisit our decision in *Hankerson* with respect to a particular set of administrative costs—namely, the costs imposed on state courts by the federal courts' exercise of their habeas corpus jurisdiction under 28 U. S. C. § 2254.[2]

## B

Ross was tried for murder under the same North Carolina burden-of-proof law that gave rise to Hankerson's claim in *Hankerson* v. *North Carolina.*[3] That law, followed in

---

[2] Title 28 U. S. C. § 2254 provides in pertinent part:

"The Supreme Court, a Justice thereof, a circuit judge, or a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States."

[3] Hankerson was convicted of second-degree murder. North Carolina law at the time of Hankerson's trial had provided that unlawfulness was an element of the crime of second-degree murder and that self-defense

6

North Carolina for over 100 years, was summarized by the North Carolina Supreme Court in *State* v. *Hankerson,* 288 N. C. 632, 647, 220 S. E. 2d 575, 586 (1975), as follows:

> "[W]hen it is established by a defendant's judicial admission, or the State proves beyond a reasonable doubt that the defendant intentionally inflicted a wound upon the deceased with a deadly weapon which proximately caused death, the law raises two presumptions against the defendant: (1) the killing was unlawful, and (2) it was done with malice. Nothing else appearing in the case the defendant would be guilty of murder in the second degree. When these presumptions arise the burden devolves upon the defendant to prove to the satisfaction of the jury the legal provocation which will rob the crime of malice and reduce it to manslaughter or which will excuse the killing altogether on the ground of self-defense. If the defendant rebuts the presumption of malice only, the presumption that the killing was unlawful remains, making the crime manslaughter."

In accordance with this well-settled state law, the jury at Ross' trial was instructed as follows:

> "[I]n a case where a person is killed as a result of a gun shot wound fired intentionally . . . where the State has satisfied you beyond a reasonable doubt that the defendant intentionally assaulted the deceased with a deadly weapon and that such assault caused her death there are two presumptions that arise in favor of the State: One,

---

negated unlawfulness. See *Hankerson* v. *North Carolina,* 432 U. S., at 238. The jury had been instructed as follows:

" 'If the State proves beyond a reasonable doubt or it is admitted that the defendant intentionally killed [the victim] with a deadly weapon, that proximately caused his death, the law raises two presumptions; first, that the killing was unlawful, and second, that it was done with malice. . . .

" '[I]n order to excuse his act altogether on the grounds of self-defense, the defendant must prove not beyond a reasonable doubt but simply to *your satisfaction* that he acted in self-defense.' " *Id.,* at 236–237.

that the killing was unlawful; two, that it was done with malice; and the burden then shifts to the defendant under those circumstances to satisfy the jury, not beyond a reasonable doubt nor by the greater weight of the evidence, but to satisfy the jury that the killing was not done with malice if he would acquit himself of a charge of murder in the second degree, that is if he would expect and ask at your hands a verdict of less than guilty of murder in the second degree the burden would be upon him under the circumstances to satisfy the jury that the killing was not done with malice and if he would exonerate himself and show that the killing was not unlawful then the burden is upon him to satisfy the jury . . . that the killing was done . . . for some reason recognized by law as justifiable; and he relies here on self-defense." App. 23–24 (emphasis deleted).

On the basis of these instructions, Ross was convicted of first-degree murder. Although Ross appealed his conviction to the North Carolina Supreme Court on a number of grounds, *In re Burrus*, 275 N. C. 517, 169 S. E. 2d 879 (1969), he did not challenge the constitutionality of these instructions—we may confidently assume this was because they were sanctioned by a century of North Carolina law and because *Mullaney* was yet six years away.[4]

Ross challenged the jury instructions for the first time in 1977, shortly after this Court decided *Hankerson*. He initially did so in a petition filed in state court for postconviction relief, where his challenge was summarily rejected at both the trial and appellate levels. See App. to Brief for Petitioners A3–A8. After exhausting his state remedies, Ross brought the instant federal habeas proceeding in the United States District Court for the Eastern District of North

---

[4] In addition, Ross did not contemporaneously object to the jury instructions. But under North Carolina law at the time, a contemporaneous objection at trial was not necessary to preserve for review a question involving jury instructions. *State* v. *Gause*, 227 N. C. 26, 40 S. E. 2d 463 (1946).

Carolina under 28 U. S. C. § 2254. The District Court, however, held that habeas relief was barred because Ross had failed to raise the issue on appeal as required by North Carolina law,[5] App. 27, and the Court of Appeals for the Fourth Circuit dismissed Ross' appeal summarily. 660 F. 2d 492 (1982). On Ross' first petition for certiorari, however, this Court vacated the judgment of the Court of Appeals and remanded the case for further consideration in light of *Engle* v. *Isaac*, 456 U. S. 107 (1982), and *United States* v. *Frady*, 456 U. S. 152 (1982), two cases in which we addressed the "cause

---

[5] Under North Carolina law, exceptions to jury instructions must be made after trial if they are to be preserved for appellate review, and errors that could have been raised on appeal may not be raised for the first time in postconviction proceedings. *State* v. *Abernathy*, 36 N. C. App. 527, 244 S. E. 2d 696 (1978); *State* v. *White*, 274 N. C. 220, 162 S. E. 2d 473 (1968). See 704 F. 2d 705 (CA4 1983); *Cole* v. *Stevenson*, 620 F. 2d 1055, 1057–1059 (CA4 1980).

Respondent argues that the North Carolina procedural bar is inapplicable in this case because the North Carolina Supreme Court considered the merits of his *Mullaney* claim both on appeal and on postconviction review, despite his procedural default. *Engle* v. *Isaac*, 456 U. S. 107, 135, n. 44 (1982). See Brief for Respondent 2–5. With respect to the former, respondent bases his argument on the fact that the North Carolina Supreme Court stated generally that it had "examined the [jury] charge and conclude[d that] it is in accordance with legal requirements and is unobjectionable." *State* v. *Ross*, 275 N. C. 550, 554, 169 S. E. 2d 875, 878 (1969). With respect to postconviction review, respondent argues that the failure of the North Carolina courts to rely explicitly on procedural grounds in summarily dismissing his petition indicates that they considered the merits of his constitutional claim. See App. to Brief for Petitioners A5, A8. Although the Court of Appeals stated that "[t]he claim of waiver is not without some support," 704 F. 2d, at 707, it did not reach the question. Similarly, in light of our disposition of this case on the basis of respondent's primary argument, we need not address the question.

In addition, respondent argues that the District Court erred in imposing a forfeiture, both because the North Carolina courts have been inconsistent in imposing the State's procedural bar for the failure to raise the burden-of-proof issue before *Mullaney* and because North Carolina law does not require a forfeiture for every procedural default. Brief for Respondent 5–10, 41. We also need not address this issue.

and prejudice" standard for procedural bars under § 2254. 456 U. S. 921 (1982). On remand, the Court of Appeals reversed, holding that Ross' claim met the "cause and prejudice" requirements and that the District Court had therefore erred in denying his petition for a writ of habeas corpus. 704 F. 2d 705 (1983). The Court of Appeals found the "cause" requirement satisfied because the *Mullaney* issue was so novel at the time of Ross' appeal that Ross' attorney could not reasonably be expected to have raised it. 704 F. 2d, at 708–709. And the State had conceded the existence of "prejudice" in light of evidence that had been introduced to indicate that Ross might have acted reflexively in self-defense. The Court of Appeals went on to hold that the jury instruction concerning the burden of proof for both malice and self-defense violated *Mullaney*. 704 F. 2d, at 709.[6] We granted certiorari, 464 U. S. 1007 (1983), to determine whether the Court of Appeals erred in concluding that Ross had "cause" for failing to raise the *Mullaney* question on appeal. We now affirm.

## II

### A

Our decisions have uniformly acknowledged that federal courts are empowered under 28 U. S. C. § 2254 to look beyond a state procedural forfeiture and entertain a state prisoner's contention that his constitutional rights have been violated. See, *e. g., Francis* v. *Henderson,* 425 U. S. 536, 538 (1976); *Fay* v. *Noia,* 372 U. S. 391, 398–399 (1963). See generally W. Duker, A Constitutional History of Habeas Corpus 181–211 (1980). The more difficult question, and the one that lies at the heart of this case is: What standards should govern the exercise of the habeas court's equitable discretion in the use of this power?

---

[6] The State complied with the decision of the Court of Appeals by releasing Ross, who, at that time, was on work-release in a custody status that allowed weekend home leaves.

A habeas court's decision whether to review the merits of a state prisoner's constitutional claim, when the prisoner has failed to follow applicable state procedural rules in raising the claim, implicates two sets of competing concerns. On the one hand, there is Congress' expressed interest in providing a federal forum for the vindication of the constitutional rights of state prisoners. There can be no doubt that in enacting § 2254, Congress sought to "interpose the federal courts between the States and the people, as guardians of the people's federal rights—to protect the people from unconstitutional action." *Mitchum* v. *Foster*, 407 U. S. 225, 242 (1972).

On the other hand, there is the State's interest in the integrity of its rules and proceedings and the finality of its judgments, an interest that would be undermined if the federal courts were too free to ignore procedural forfeitures in state court. The criminal justice system in each of the 50 States is structured both to determine the guilt or innocence of defendants and to resolve all questions incident to that determination, including the constitutionality of the procedures leading up to the verdict. Each State's complement of procedural rules facilitates this complex process, channeling, to the extent possible, the resolution of various types of questions to the stage of the judicial process at which they can be resolved most fairly and efficiently.

North Carolina's rule requiring a defendant initially to raise a legal issue on appeal, rather than on postconviction review, performs such a function. It affords the state courts the opportunity to resolve the issue shortly after trial, while evidence is still available both to assess the defendant's claim and to retry the defendant effectively if he prevails in his appeal. See Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 147 (1970). This type of rule promotes not only the accuracy and efficiency of judicial decisions, but also the finality of those decisions, by forcing the defendant to litigate all of his claims together, as quickly after trial as the docket will allow, and

while the attention of the appellate court is focused on his case. To the extent that federal courts exercise their § 2254 power to review constitutional claims that were not properly raised before the state court, these legitimate state interests may be frustrated: evidence may no longer be available to evaluate the defendant's constitutional claim if it is brought to federal court long after his trial; and it may be too late to retry the defendant effectively if he prevails in his collateral challenge. Thus, we have long recognized that "in some circumstances considerations of comity and concerns for the orderly administration of criminal justice require a federal court to forgo the exercise of its habeas corpus power." *Francis* v. *Henderson, supra,* at 539. See also *Fay* v. *Noia, supra,* at 425–426.

Where, as in this case, a defendant has failed to abide by a State's procedural rule requiring the exercise of legal expertise and judgment, the competing concerns implicated by the exercise of the federal court's habeas corpus power have come to be embodied in the "cause and prejudice" requirement: When a procedural default bars litigation of a constitutional claim in state court, a state prisoner may not obtain federal habeas corpus relief absent a showing of "cause and actual prejudice." *Engle* v. *Isaac,* 456 U. S., at 129; *Wainwright* v. *Sykes,* 433 U. S. 72 (1977). See *id.,* at 91–94 (BURGER, C. J., concurring); *id.,* at 94–95 (STEVENS, J., concurring). Cf. *id.,* at 98–99 (WHITE, J., concurring in judgment).[7] We therefore turn to the question whether the cause-and-prejudice test was met in this case.

---

[7] See, *e. g., Crick* v. *Smith,* 650 F. 2d 860, 867–868 (CA6 1981); *Graham* v. *Mabry,* 645 F. 2d 603, 606–607 (CA8 1981); *Boyer* v. *Patton,* 579 F. 2d 284, 286 (CA3 1978). See also Comment, Federal Habeas Corpus Review of Unintentionally Defaulted Constitutional Claims, 130 U. Pa. L. Rev. 981, 988–989 (1982).

The situation of a defendant representing himself, see *Faretta* v. *California,* 422 U. S. 806 (1975), is not presented in this case and we express no view on the applicability of the cause-and-prejudice requirement in that context.

## B

As stated above, petitioners have conceded that Ross suffered "actual prejudice" as a result of the trial court's instruction imposing on him the burden of proving self-defense or lack of malice. 704 F. 2d, at 707. At trial, Ross testified that he had been stabbed in the neck immediately prior to the shooting for which he was convicted and that when he felt the stab wound he "turned around shooting." App. 18. In corroboration of this testimony, another witness stated that Ross was bleeding from the neck when Ross left the scene of the shooting. Therefore, were it not for the fact that Ross was required to bear the burden of proving lack of malice and self-defense, he might not have been convicted of first-degree murder. Thus the only question for decision is whether there was "cause" for Ross' failure to raise the *Mullaney* issue on appeal.[8]

The Court of Appeals held that there was cause for Ross' failure to raise the *Mullaney* issue on appeal because of the

---

[8] The term "cause" was first employed in this context in *Davis* v. *United States*, 411 U. S. 233 (1973). The petitioner in that case had been convicted in federal court. It was not until he filed a petition for postconviction relief under 28 U. S. C. § 2255 that he challenged the racial composition of the grand jury that had indicted him. Thus he had failed to comply with Rule 12(b)(2) of the Federal Rules of Criminal Procedure, which required that "[d]efenses and objections based on defects in the institution of the prosecution or in the indictment . . . may be raised only by motion before trial," and that the failure to present such defenses or objections "constitutes a waiver thereof, but the court for *cause shown* may grant relief from the waiver" (emphasis added). See 411 U. S., at 236. In *Davis*, the Court held that the "cause shown" requirement of Rule 12(b)(2) applies to claims brought under § 2255 where the petitioner has failed to raise the claim in accordance with the Rule. In *Francis* v. *Henderson*, 425 U. S. 536 (1976), the same question arose in the context of an action brought by a state prisoner under § 2254. The Court held that, although the State in which the petitioner had been convicted had no "cause shown" provision in its rule requiring timely challenges to indictments, the rule of *Davis* v. *United States* should apply nonetheless.

"novelty" of the issue at the time.[9]   As the Court of Appeals characterized the legal basis for raising the *Mullaney* issue at the time of Ross' appeal, there was merely "[a] hint here and there voiced in other contexts," which did not "offe[r] a reasonable basis for a challenge to frequently approved jury instructions which had been used in North Carolina, and many other states, for over a century."   704 F. 2d, at 708.

*Engle* v. *Isaac, supra,* left open the question whether the novelty of a constitutional issue at the time of a state-court proceeding could, as a general matter, give rise to cause for defense counsel's failure to raise the issue in accordance with applicable state procedures.   *Id.,* at 131.   Today, we answer that question in the affirmative.

Because of the broad range of potential reasons for an attorney's failure to comply with a procedural rule, and the virtually limitless array of contexts in which a procedural default can occur, this Court has not given the term "cause" precise content.   See *Wainwright* v. *Sykes, supra,* at 87. Nor do we attempt to do so here.   Underlying the concept of cause, however, is at least the dual notion that, absent exceptional circumstances, a defendant is bound by the tactical decisions of competent counsel, *Wainwright* v. *Sykes, supra,* at 91, and n. 14; *Henry* v. *Mississippi,* 379 U. S. 443, 451 (1965), and that defense counsel may not flout state procedures and then turn around and seek refuge in federal court from the consequences of such conduct, *Wainwright* v. *Sykes, supra,* at 89–90; *Engle* v. *Isaac, supra,* at 130.   A defense

---

[9] Other Courts of Appeals have held that novelty can constitute cause. See, *e. g., Norris* v. *United States,* 687 F. 2d 899, 903 (CA7 1982); *Dietz* v. *Solem,* 677 F. 2d 672, 675 (CA8 1982); *Collins* v. *Auger,* 577 F. 2d 1107, 1110, and n. 2 (CA8 1978); *Myers* v. *Washington,* 702 F. 2d 766, 768 (CA9 1983); *Gibson* v. *Spalding,* 665 F. 2d 863, 866 (CA9 1981); *Ford* v. *Strickland,* 696 F. 2d 804, 817 (CA11 1983); *Sullivan* v. *Wainwright,* 695 F. 2d 1306, 1311 (CA11 1983).   See generally Comment, Habeas Corpus— The Supreme Court Defines The *Wainwright* v. *Sykes* "Cause" and "Prejudice" Standard, 19 Wake Forest L. Rev. 441, 454–456 (1983).

attorney, therefore, may not ignore a State's procedural rules in the expectation that his client's constitutional claims can be raised at a later date in federal court. *Wainwright* v. *Sykes, supra,* at 89; *Engle* v. *Isaac, supra,* at 128–129. Similarly, he may not use the prospect of federal habeas corpus relief as a hedge against the strategic risks he takes in his client's defense in state court. *Wainwright* v. *Sykes,* 433 U. S., at 96–97 (STEVENS, J., concurring); *id.,* at 98–99 (WHITE, J., concurring in judgment). In general, therefore, defense counsel may not make a tactical decision to forgo a procedural opportunity—for instance, an opportunity to object at trial or to raise an issue on appeal—and then, when he discovers that the tactic has been unsuccessful, pursue an alternative strategy in federal court. The encouragement of such conduct by a federal court on habeas corpus review would not only offend generally accepted principles of comity, but would also undermine the accuracy and efficiency of the state judicial systems to the detriment of all concerned. Procedural defaults of this nature are, therefore, "inexcusable," *Estelle* v. *Williams,* 425 U. S. 501, 513 (1976) (POWELL, J., concurring), and cannot qualify as "cause" for purposes of federal habeas corpus review.

On the other hand, the cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests. And the failure of counsel to raise a constitutional issue reasonably unknown to him is one situation in which the requirement is met.[10] If counsel has no reasonable basis upon which to formulate a constitutional

---

[10] Several commentators have urged this and related positions. See, *e. g.,* Goodman & Sallet, *Wainwright* v. *Sykes:* The Lower Federal Courts Respond, 30 Hastings L. Rev. 1683, 1712 (1979); Friendly, Is Innocence Irrelevant? Collateral Attack on Criminal Judgments, 38 U. Chi. L. Rev. 142, 153–154 (1970); Bator, Finality in Criminal Law and Federal Habeas Corpus for State Prisoners, 76 Harv. L. Rev. 441, 460 (1963); Comment, *supra* n. 7, at 1012–1013.

question, setting aside for the moment exactly what is meant by "reasonable basis," see *infra*, at 16–18, it is safe to assume that he is sufficiently unaware of the question's latent existence that we cannot attribute to him strategic motives of any sort.

Counsel's failure to raise a claim for which there was no reasonable basis in existing law does not seriously implicate any of the concerns that might otherwise require deference to a State's procedural bar. Just as it is reasonable to assume that a competent lawyer will fail to perceive the possibility of raising such a claim, it is also reasonable to assume that a court will similarly fail to appreciate the claim. It is in the nature of our legal system that legal concepts, including constitutional concepts, develop slowly, finding partial acceptance in some courts while meeting rejection in others. Despite the fact that a constitutional concept may ultimately enjoy general acceptance, as the *Mullaney* issue currently does, when the concept is in its embryonic stage, it will, by hypothesis, be rejected by most courts. Consequently, a rule requiring a defendant to raise a truly novel issue is not likely to serve any functional purpose. Although there is a remote possibility that a given state court will be the first to discover a latent constitutional issue and to order redress if the issue is properly raised, it is far more likely that the court will fail to appreciate the claim and reject it out of hand. Raising such a claim in state court, therefore, would not promote either the fairness or the efficiency of the state criminal justice system. It is true that finality will be disserved if the federal courts reopen a state prisoner's case, even to review claims that were so novel when the cases were in state court that no one would have recognized them. This Court has never held, however, that finality, standing alone, provides a sufficient reason for federal courts to compromise their protection of constitutional rights under § 2254.

In addition, if we were to hold that the novelty of a constitutional question does not give rise to cause for counsel's

failure to raise it, we might actually disrupt state-court proceedings by encouraging defense counsel to include any and all remotely plausible constitutional claims that could, some day, gain recognition.[11]   Particularly disturbed by this prospect, Judge Haynsworth, writing for the Court of Appeals in this case, stated:

> "If novelty were never cause, counsel on appeal would be obliged to raise and argue every conceivable constitutional claim, no matter how far fetched, in order to preserve a right for post-conviction relief upon some future, unforeseen development in the law.   Appellate courts are already overburdened with meritless and frivolous cases and contentions, and an effective appellate lawyer does not dilute meritorious claims with frivolous ones. Lawyers representing appellants should be encouraged to limit their contentions on appeal at least to those which may be legitimately regarded as debatable."   704 F. 2d, at 708.

Accordingly, we hold that where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise the claim in accordance with applicable state procedures.   We therefore turn to the question whether the *Mullaney* issue, which respondent Ross has raised in this action, was sufficiently novel at the time of the appeal from his conviction to excuse his attorney's failure to raise it at that time.

### C

As stated above, the Court of Appeals found that the state of the law at the time of Ross' appeal did not offer a "reason-

---

[11] For instance, in *Hurtado* v. *California,* 110 U. S. 516 (1884), this Court held that indictment by a grand jury is not essential to due process under the Fourteenth Amendment.   Surely, we should not encourage criminal counsel in state court to argue the contrary in every possible case, even if there were a possibility that some day *Hurtado* may be overruled.

able basis" upon which to challenge the jury instructions on the burden of proof. 704 F. 2d, at 708. We agree and therefore conclude that Ross had cause for failing to raise the issue at that time. Although the question whether an attorney has a "reasonable basis" upon which to develop a legal theory may arise in a variety of contexts, we confine our attention to the specific situation presented here: one in which this Court has articulated a constitutional principle that had not been previously recognized but which is held to have retroactive application. In *United States* v. *Johnson*, 457 U. S. 537 (1982), we identified three situations in which a "new" constitutional rule, representing "'a clear break with the past,'" might emerge from this Court. *Id.*, at 549 (quoting *Desist* v. *United States*, 394 U. S. 244, 258–259 (1969)). First, a decision of this Court may explicitly overrule one of our precedents. *United States* v. *Johnson*, 457 U. S., at 551. Second, a decision may "overtur[n] a longstanding and widespread practice to which this Court has not spoken, but which a near-unanimous body of lower court authority has expressly approved." *Ibid.* And, finally, a decision may "disapprov[e] a practice this Court arguably has sanctioned in prior cases." *Ibid.* By definition, when a case falling into one of the first two categories is given retroactive application, there will almost certainly have been no reasonable basis upon which an attorney previously could have urged a state court to adopt the position that this Court has ultimately adopted. Consequently, the failure of a defendant's attorney to have pressed such a claim before a state court is sufficiently excusable to satisfy the cause requirement. Cases falling into the third category, however, present a more difficult question. Whether an attorney had a reasonable basis for pressing a claim challenging a practice that this Court has arguably sanctioned depends on how direct this Court's sanction of the prevailing practice had been, how well entrenched the practice was in the relevant jurisdiction at the time of defense counsel's failure to challenge it, and how

strong the available support is from sources opposing the prevailing practice.

This case is covered by the third category. At the time of Ross' appeal, *Leland* v. *Oregon*, 343 U. S. 790 (1952), was the primary authority addressing the due process constraints upon the imposition of the burden of proof on a defendant in a criminal trial. In that case, the Court held that a State may require a defendant on trial for first-degree murder to bear the burden of proving insanity beyond a reasonable doubt, despite the fact that the presence of insanity might tend to imply the absence of the mental state required to support a conviction. See *id.*, at 806 (Frankfurter, J., dissenting). *Leland* thus confirmed "the long-accepted rule . . . that it was constitutionally permissible to provide that various affirmative defenses were to be proved by the defendant," *Patterson* v. *New York*, 432 U. S. 197, 211 (1977), and arguably sanctioned the practice by which a State crafts an affirmative defense to shift to the defendant the burden of disproving an essential element of a crime. As stated above, North Carolina had consistently engaged in this practice with respect to the defenses of lack of malice and self-defense for over a century. See *supra*, at 5–7. Indeed, it was not until five years after Ross' appeal that the issue first surfaced in the North Carolina courts, and even then it was rejected out of hand. *State* v. *Sparks*, 285 N. C. 631, 643–644, 207 S. E. 2d 712, 719 (1974). See also *State* v. *Wetmore*, 287 N. C. 344, 353–354, 215 S. E. 2d 51, 56–57 (1975); *State* v. *Harris*, 23 N. C. App. 77, 79, 208 S. E. 2d 266, 268 (1974).

Moreover, prior to Ross' appeal, only one Federal Court of Appeals had held that it was unconstitutional to require a defendant to disprove an essential element of a crime for which he is charged. *Stump* v. *Bennett*, 398 F. 2d 111 (CA8 1968). Even that case, however, involved the burden of proving an alibi, which the Court of Appeals described as the "den[ial of] the possibility of [the defendant's] having commit-

ted the crime by reason of being elsewhere." *Id.*, at 116. The court thus contrasted the alibi defense with "an affirmative defense [which] generally applies to justification for his admitted participation in the act itself," *ibid.*, and distinguished *Leland* on that basis, 398 F. 2d, at 119. In addition, at the time of Ross' appeal, the Superior Court of Connecticut had struck down, as violative of due process, a statute making it unlawful for an individual to possess burglary tools "without lawful excuse, the proof of which excuse shall be upon him." *State* v. *Nales*, 28 Conn. Supp. 28, 29, 248 A. 2d 242, 243 (1968). Because these cases provided only indirect support for Ross' claim, and because they were the only cases that would have supported Ross' claim at all, we cannot conclude that they provided a reasonable basis upon which Ross could have realistically appealed his conviction.

In *Engle* v. *Isaac,* 456 U. S. 107 (1982), this Court reached the opposite conclusion with respect to the failure of a group of defendants to raise the *Mullaney* issue in 1975. That case differs from this one, however, in two crucial respects. First, the procedural defaults at issue there occurred five years after we decided *Winship*, which held that "the Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *Winship*, 397 U. S., at 364. As the Court in *Engle* v. *Isaac* stated, *Winship* "laid the basis for [the habeas petitioners'] constitutional claim." 456 U. S., at 131. Second, during those five years, "numerous courts agreed that the Due Process Clause requires the prosecution to bear the burden of disproving certain affirmative defenses" (footnotes omitted). See *id.*, at 132, n. 40 (citing cases). Moreover, as evidence of the reasonableness of the legal basis for raising the *Mullaney* issue in 1975, *Engle* v. *Isaac* emphasized that "dozens of defendants relied upon *[Winship]* to challenge the constitutionality of rules requiring them to bear a burden of

proof." 456 U. S., at 131–132. None of these bases of decision relied upon in *Engle* v. *Isaac* is present in this case.

## III

We therefore conclude that Ross' claim was sufficiently novel in 1969 to excuse his attorney's failure to raise the *Mullaney* issue at that time. Accordingly, we affirm the decision of the Court of Appeals with respect to the question of "cause." [12]

*It is so ordered.*

JUSTICE POWELL, concurring.

I join the opinion and judgment of the Court. I write separately only to make clear that I continue to adhere to the views expressed in my concurring opinion in *Hankerson* v. *North Carolina*, 432 U. S. 233, 246–248 (1977).

In *Hankerson*, I agreed with the Court that the new constitutional rule announced in *Mullaney* v. *Wilbur*, 421 U. S. 684 (1975), should apply retroactively to cases on direct review. In this case, the rule of *Mullaney* has been applied retroactively on collateral review. For the reasons stated by Justice Harlan in *Mackey* v. *United States*, 401 U. S. 667, 675–702 (1971) (separate opinion), I would apply new constitutional rules retroactively on collateral review only in exceptional cases. See *Hankerson, supra*, at 247–248 (POWELL, J., concurring). The State, however, has not challenged the retroactive application of *Mullaney* in this case. Thus, the issue whether that retroactive application is proper has not been presented to this Court.

Assuming, as we must, that *Mullaney* may be applied retroactively in this case, and for the reasons set forth in the Court's opinion today, I agree that Ross has shown "cause" for failing to raise his constitutional claim in a timely fashion.

---

[12] Petitioners have not challenged the Court of Appeals' conclusion that the jury instructions were unconstitutional under *Mullaney*. We therefore do not reach the question.

JUSTICE REHNQUIST, with whom THE CHIEF JUSTICE, JUSTICE BLACKMUN, and JUSTICE O'CONNOR join, dissenting.

Today's decision will make less sense to laymen than it does to lawyers. Respondent Ross was convicted of first-degree murder in a North Carolina trial court in 1969. In 1977, eight years later, he instituted the present federal habeas action seeking to have his conviction set aside on the ground that an instruction given by the trial judge improperly placed upon him, rather than on the State, the burden of proving the defenses of "lack of malice" and "self-defense." Today, 15 years after the trial, the Court holds that Ross' conviction must be nullified on federal constitutional grounds. Responding to the State's contention that Ross never raised any objection to the instruction given by the trial judge, and that North Carolina law requires such an objection, the Court blandly states that no competent lawyer in 1969 could have expected that such an objection would have been sustained, because the law was to the contrary. Consequently, we have the anomalous situation of a jury verdict in a case tried properly by then-prevailing constitutional standards being set aside because of legal developments that occurred long after the North Carolina conviction became final.

Along its way to this troubling result, the Court reaffirms the importance of the principles of comity and orderly administration of justice that underlie our decisions in such cases as *Wainwright* v. *Sykes*, 433 U. S. 72 (1977). It fully concedes the application of these principles on federal habeas review through the "cause and prejudice" standard adopted in *Wainwright* v. *Sykes*. *Ante,* at 11.[1] The Court's seemingly

---

[1] Part of the Court's opinion suggests that it might be of two minds on this matter. It states that "the cause requirement may be satisfied under certain circumstances when a procedural failure is not attributable to an intentional decision by counsel made in pursuit of his client's interests." *Ante*, at 14. As the Court's opinion makes clear, however, this formulation does not presage a return to the "knowing waiver" or "deliberate

straightforward determination of "cause" in this instance also involves a labyrinthine treatment of our prior decisions that flouts both common sense and significantly bends our decisions in *Hankerson* v. *North Carolina,* 432 U. S. 233 (1977), and *Engle* v. *Isaac,* 456 U. S. 107 (1982).

The District Court in this case held that respondent failed to satisfy the "cause" standard of *Wainwright* v. *Sykes,* and thus, his claims were barred by the State's procedural default rule, which required him to at least raise the issue on direct appeal. Like the Court of Appeals, the Court proposes to adopt "novelty" as a possible form of "cause" under *Wainwright* v. *Sykes* to justify ignoring the State's procedural default rule. But this equating of novelty with cause pushes the Court into a conundrum which it refuses to recognize. The more "novel" a claimed constitutional right, the more unlikely a violation of that claimed right undercuts the fundamental fairness of the trial. To untie this knot in logic, the Court proposes a definition of novelty that makes a claim novel if the legal basis for asserting the claim is not reasonably available. *Ante,* at 15–16. This standard, of course, has no meaningful content independent of the factual setting in which it is applied. The Court's attempt to give content to this novelty standard, however, is simply too facile; under its application, virtually any new constitutional claim can be deemed "novel."

The starting point for the Court's evaluation of respondent's novelty claim should be our decision in *In re Winship,* 397 U. S. 358 (1970), which initiated a line of cases culminating, one would hope, in *Sandstrom* v. *Montana,* 442 U. S. 510 (1979). The Court in *Winship* held that the Due Process Clause of the Constitution required the State to prove the elements of a crime "beyond a reasonable doubt." But the only issue in *Winship* that was treated as novel was whether

by-pass" rule of *Fay* v. *Noia,* 372 U. S. 391 (1963), which was squarely rejected by a majority of this Court in *Wainwright* v. *Sykes,* 433 U. S., at 87–88.

the same burden of proof requirements applied to juvenile trials. With respect to adults the Court treated this question as settled by a long line of earlier decisions, ranging in date of decision from *Miles* v. *United States*, 103 U. S. 304 (1881), to *Holland* v. *United States*, 348 U. S. 121 (1954). The Court stated:

> "Expressions in many opinions of this Court indicate that it has long been assumed that proof of a criminal charge beyond a reasonable doubt is constitutionally required." 397 U. S., at 362.

In short, just a year after respondent's conviction, this Court regarded as well established the principle that in an adult trial the State was constitutionally required to bear the burden of proof as to "every fact necessary to constitute the crime . . . charged." *Id.*, at 364.

Our decision in *Winship* was held fully retroactive in *Ivan V.* v. *City of New York*, 407 U. S. 203 (1972). Three years later, in *Mullaney* v. *Wilbur*, 421 U. S. 684 (1975), we held that it was contrary to our *Winship* decision to require a defendant in a murder prosecution to prove that he acted in the heat of passion or sudden provocation in order to reduce the offense to manslaughter. The Court held that the constitutional interests described in *Winship* were "implicated to a greater degree in this case than they were in *Winship* itself." 421 U. S., at 700.

The *Mullaney* decision was given retroactive effect in *Hankerson* v. *North Carolina*, *supra*. In reaching this decision, however, the Court dealt with the State's argument that retroactive application of *Mullaney* v. *Wilbur* would have a serious, adverse impact on the administration of justice in this country because of the number of potential retrials that might be required, by reaffirming the principles enunciated in *Ivan V.* and by stating:

> "Moreover, we are not persuaded that the impact on the administration of justice in those States that utilize the

sort of burden-shifting presumptions involved in this case will be as devastating as respondent asserts. If the validity of such burden-shifting presumptions were as well settled in the States that have them as respondent asserts, then it is unlikely that prior to *Mullaney* many defense lawyers made appropriate objections to jury instructions incorporating those presumptions. Petitioner made none here. The North Carolina Supreme Court passed on the validity of the instructions anyway. The States, if they wish, may be able to insulate past convictions by enforcing the normal and valid rule that failure to object to a jury instruction is a waiver of any claim of error." 432 U. S., at 244, n. 8.

If North Carolina took any solace from this Court's explicit statement in *Hankerson* that North Carolina need not worry about having to retry murders so long as it applied a contemporaneous-objection rule, today's opinion shows that its reliance was quite unjustified. The Court today does a complete about-face from *Hankerson* and, without even mentioning the above-quoted language, holds that the state court may not bar the belated assertion of such a claim by application of a contemporaneous-objection rule. The Court goes on to conclude that the claim based upon the allocation of proof in the instructions was "novel" in 1969, because the leading case on point at that time was *Leland* v. *Oregon,* 343 U. S. 790 (1952), which held that the State might require a defendant to bear the burden of proving affirmative defenses. But the holding of *Leland* was reaffirmed in *Patterson* v. *New York,* 432 U. S. 197 (1977), indicating that our decision in *Leland* did not speak directly to the issues involved in *Mullaney* v. *Wilbur.* Further, far from being regarded as the "leading case" on the subject in 1969, *Leland* v. *Oregon* was only mentioned as one of a number of cases in a string citation for the general proposition approved in *Winship.* 397 U. S., at 362.

Finally, the Court asserts no convincing basis for distinguishing respondent's claims from those rejected in our decision in *Engle* v. *Isaac*, 456 U. S. 107 (1982). In *Engle* v. *Isaac* we determined that claims similar to respondent's hardly qualified as novel, their assertion coming at least four and one-half years after *Winship*. Though we stated that *Winship* laid the basis for the claims asserted in *Engle* v. *Isaac*, we also expressly stated that the legal basis on which *Winship* rested was perceived earlier by other courts. 456 U. S., at 131, n. 39. The Court now distinguishes those other cases essentially on their facts, while never coming to grips with the fact that the reasoning employed in *State* v. *Nales*, 28 Conn. Supp. 28, 248 A. 2d 242 (1968), and *Stump* v. *Bennett*, 398 F. 2d 111 (CA8 1968), formed the framework for respondent's claims asserted here.[2]

We are reduced by this bizarre line of reasoning to the following conclusions: *Winship*, decided in 1970, simply reaffirmed a long line of existing cases when it held that the burden of proof as to the elements of the crime must be borne by the State "beyond a reasonable doubt"; and *Mullaney* v. *Wilbur*, decided in 1975, considered this principle even more

---

[2] For instance, the Court's treatment of the decision in *Stump* v. *Bennett* wholly ignores the following language:

"Whether or not one interprets the treatment of *Davis* in *Leland* as denying a constitutional status to the 'presumption of innocence,' this much is clear: when the burden of persuasion is shifted to the defendant to disprove essential elements of a crime, as it was in the instant case, then it is certain that the due process clause of the Fourteenth Amendment has been violated." 398 F. 2d, at 118.

I cannot imagine a clearer basis than *Stump* for asserting the claim upon which respondent ultimately prevailed in the Fourth Circuit.

*Stump* was decided on June 27, 1968; by November 13, 1968, the Connecticut court in *State* v. *Nales* relied upon *Stump* to strike down the conviction in that case. 28 Conn. Supp., at 31, 248 A. 2d, at 244. Respondent's conviction came in March of the following year, which certainly is enough time to find that the legal basis for making his claim was reasonably available to him.

applicable to instructions on elements of the crime in a murder trial than was true of the finding of delinquency in *Winship*. In other words, *Mullaney* was an *a fortiori* case from *Winship*, and *Winship* announced a principle which had been settled many years ago by decisions of this Court.[3]

But, it seems, lawyers are not required to reason in quite the same manner as judges do. A lawyer in North Carolina, one year before *Winship* announced that the constitutional requirement of proof beyond a reasonable doubt had been long settled in the law, had no "reasonable basis" upon which to challenge the jury instructions given by the North Carolina trial court in this case. Either one or the other of these modes of reasoning, it seems to me, must be wrong.

I would conclude that there was an adequate basis for raising an objection in this case, and that the State's interests in the finality of its judgments require an attorney to raise an objection when an instruction violates a constitutional requirement of the allocation of burden of proof which this Court held one year later had been long settled. I would reverse the judgment of the Court of Appeals.

---

[3] The Court justifies its decision in part on the ground that federal courts, sitting on habeas review, stand as the last guardians of individual rights against state oppression. *Ante*, at 10. As protectors of individual liberties, however, the federal judiciary must take into consideration the systemic effects of its habeas review powers. The orderly administration of justice and concerns of finality not only have significance for the allocation of social resources in the area of criminal justice, but also affect the distribution of those resources so allocated, and ultimately, what justice remains to be dispensed by courts. The time and energy spent relitigating trials long final and completely fair when first conducted takes resources away from others demanding attention from the criminal justice system. The Court's treatment of novelty as cause suggests that whenever the Court announces a new principle of constitutional law to be applied retroactively, a State's procedural default rule will have no effect. Far preferable, it seems to me, would be the adoption of the position of Justice Harlan, that new constitutional principles should, with rare exception, not be given retroactive application on habeas review. See *Mackey* v. *United States*, 401 U. S. 667, 688–689 (1971).