Robert A. SALBERG, Petitioner–
Appellant,

v.

UNITED STATES of America,
Respondent–Appellee.

No. 91–3248.

United States Court of Appeals,
Seventh Circuit.

Argued May 1, 1992.

Decided July 22, 1992.

As Amended July 22, 1992.

**380**

Terrence M. Spears, Belvidere, Ill. (argued), for petitioner-appellant.

Ross O. Silverman, Asst. U.S. Atty. (argued), Office of U.S. Atty., Crim. Receiving, Appellate Div., Chicago, Ill., John G. McKenzie, Asst. U.S. Atty., Office of U.S. Atty., Rockford, Ill., for respondent-appellee.

Before CUDAHY, POSNER and EASTERBROOK, Circuit Judges.

CUDAHY, Circuit Judge.

In 1988 a jury convicted Robert Salberg of two counts of failure to file income tax returns and one count of tax evasion. Salberg appealed his conviction to this court and we affirmed. *United States v. Salberg*, 902 F.2d 37 (7th Cir.1990) (unpublished order). Salberg then petitioned the district court under 28 U.S.C. § 2255 to vacate his sentence arguing that his conviction was unlawful in light of *Cheek v. United States*, — U.S. —, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991), and that his prosecution violated the Paperwork Reduction Act, 44 U.S.C. §§ 3501 *et seq.* The district court disagreed and dismissed the petition. We affirm.

## I.

Like most people, Robert Salberg does not like to pay taxes. Unlike most people, however, he simply did not file income tax returns for two years (1980 and 1981) despite the fact that he owned and operated a successful cement contracting business. On March 31, 1987, Salberg was indicted for willfully failing to file his federal individual income tax returns for the years 1980 and 1981 and willfully attempting to evade his income taxes for 1981. Before trial, the government moved *in limine* to prevent Salberg from raising certain arguments as to the constitutionality of the tax laws and their application to him, arguments that the Seventh Circuit had previously held objectively unreasonable. Salberg did not object to the government's motion;[1] he did, however, file his own mo-

---

1. Salberg contends that he objected to the   government's motion *in limine* but the record

tion *in limine* seeking to preclude the government from referring to him as a "tax protester" or presenting any evidence of what the government "imagines to be the beliefs of the [petitioner] in regards to the Constitutionality, legality, fairness, or morality of the Federal Income Tax System." The district court granted both motions.

At trial, Salberg represented himself, although the court also appointed stand-by counsel. Salberg did not testify at trial, call any witnesses or present any evidence. Instead, Salberg relied on his closing argument in which he contended that the government had not proven beyond a reasonable doubt that he had failed to file federal income tax returns in 1980 and 1981, that he attempted to conceal his income during those years or that he had additional tax due and owing for 1981. At the close of evidence, the district court instructed the jury that "an act is done 'willfully' if done voluntarily and intentionally with the purpose of avoiding a known legal duty." The court gave no other instruction regarding willfulness. On July 1, 1988, the jury found Salberg guilty on all counts, and Judge Hart sentenced Salberg to 30 months in prison with one year suspended for tax evasion and five years probation for failure to file income tax returns to run consecutively with his incarceration.

On July 13, 1988, Salberg filed motions for a new trial and for a judgment of acquittal. Neither of these motions challenged the district court's ruling granting the government's motion *in limine* regarding objectively unreasonable defenses. The district court denied both motions and Salberg appealed. On appeal, Salberg filed a twenty-four page brief raising sixteen issues, but he did not challenge the grant of the motion *in limine* with respect to objectively unreasonable defenses. On April 23, 1990, we affirmed Salberg's convictions in an unpublished opinion. Salberg did not petition for certiorari in the Supreme Court. Salberg served his time in prison and is now on probation.

reflects no such objection by Salberg either before trial, at trial, in any post trial motions or

On June 13, 1991, Salberg filed a petition for habeas corpus alleging that his conviction and sentence were illegal under the Supreme Court's recent decision in *Cheek v. United States,* —— U.S. ——, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). In *Cheek,* the Court rejected the Seventh Circuit's "objective reasonableness" standard in criminal tax cases and held that a good faith misunderstanding or a good faith belief that one is not violating the law negates willfulness, whether or not that belief is objectively reasonable. Salberg later amended his petition to add the argument that his conviction and sentence were illegal because they violated the Paperwork Reduction Act. The district court denied the petition, holding that Salberg could not attack his conviction under *Cheek* because he had not established "cause" for his failure to object at trial or on direct appeal to the government's motion *in limine.* The district court suggested that Salberg may have also waived the Paperwork Reduction Act issue by not raising it at trial or on direct appeal, but in any event the court found that the claim failed on its merits. Salberg now appeals.

## II.

### A. *Cheek Claim*

■ At the outset, we note that our inquiry in this case is a limited one; the failure to raise a constitutional challenge at trial or on direct appeal bars a defendant from raising such issues in a federal habeas proceeding absent a showing of cause for procedural default and actual prejudice. *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982); *Norris v. United States,* 687 F.2d 899, 901 (7th Cir. 1982). The failure of a petitioner to establish either cause or prejudice requires dismissal of his habeas petition. *Buelow v. Dickey,* 847 F.2d 420, 425 (7th Cir.1988), *cert. denied,* 489 U.S. 1032, 109 S.Ct. 1168, 103 L.Ed.2d 227 (1989).

on his direct appeal.

■ Salberg argues that he failed to make the *Cheek* argument at trial because of the district court's representation that an objectively unreasonable belief could not negate willfulness. However, the district court's assertions as to the legal status of objectively unreasonable beliefs were correct under the law of this circuit at the time they were made. We do not see how a district judge's correct statement of the law can constitute cause for a procedural default, particularly one that was repeated on direct appeal.

■ Salberg also contends that he has cause for his procedural default because the claim established by the change in the law in *Cheek* was novel and unavailable to him either at the time of his trial·or at the time of his direct appeal. The Supreme Court has declined specifically to define cause in the habeas context, but in *Reed v. Ross*, 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984), the Court held that "where a constitutional claim is so novel that its legal basis is not reasonably available to counsel, a defendant has cause for his failure to raise a claim." *Id.* at 16, 104 S.Ct. at 2910. A constitutional claim is not "reasonably available" if the decision establishing that claim (1) expressly overruled existing Supreme Court precedent, (2) overturned a long-standing and widespread practice to which a "near unanimous" body of lower court authority had adhered or (3) disapproves a practice that the Supreme Court had arguably sanctioned in the past. *Id.* at 17, 104 S.Ct. at 2910–11.

■ Salberg's claim does not fall into any of the *Ross* categories. In the *Cheek* decision the Court did not explicitly overrule its own precedent or disapprove a practice which it had previously sanctioned. Nor did *Cheek* overturn "a longstanding and widespread practice to which [the] Court has not yet spoken, but which a near unanimous body of lower court authority has expressly approved." *Id.* In fact, at the time of Salberg's trial and appeal, our circuit was the only one holding that a good faith misunderstanding of the law must be "objectively reasonable" to negate the necessary mental state for tax offenses. *United States v. Buckner*, 830 F.2d 102, 103 (7th Cir.1987); *United States v. Moore*, 627 F.2d 830, 833 (7th Cir.1980), *cert. denied*, 450 U.S. 916, 101 S.Ct. 1360, 67 L.Ed.2d 342 (1981). Every other circuit to address the issue had rejected the objectively reasonable test and adhered to a subjective standard of willfulness in criminal tax cases. *See, e.g., United States v. Whiteside*, 810 F.2d 1306, 1310 (5th Cir. 1987); *United States v. Phillips*, 775 F.2d 262, 264 (10th Cir.1985); *United States v. Aitken*, 755 F.2d 188, 191 (1st Cir.1985); *Cooley v. United States*, 501 F.2d 1249, 1253 n. 4 (9th Cir.1974), *cert. denied*, 419 U.S. 1123, 95 S.Ct. 809, 42 L.Ed.2d 824 (1975); *Yarborough v. United States*, 230 F.2d 56, 61 (4th Cir.), *cert. denied*, 351 U.S. 969, 76 S.Ct. 1034, 100 L.Ed. 1487 (1956); *Battjes v. United States*, 172 F.2d 1, 4 (6th Cir.1949). Thus, because the approach taken by our circuit could hardly be considered part of a "near unanimous" body of authority, the change in the law represented by *Cheek* does not constitute cause under the second scenario illustrated in *Ross*.

Although the law of this circuit at the time of Salberg's trial and direct appeal was that only an objectively reasonable belief negated wilfulness, Salberg could have raised the issue in his trial and on his direct appeal in order to preserve his claim. Salberg contends that it would have been futile at that time to raise such a· claim. However, futility alone has never constituted cause for a procedural default. In *Engle v. Isaac*, 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), the Court rejected just such an argument and held that the defendants had failed to demonstrate adequate cause for their procedural default because "the futility of presenting an objection ... cannot alone constitute cause for a failure to object at trial." *Id.* at 130, 102 S.Ct. at 1573. The Court explicitly stated that "[w]here the basis of a constitutional ·claim is available, and other defense counsel ·have perceived and litigated the claim," alleged unawareness of the objection will not constitute "cause" for a procedural default. *Id.* at 134, 102 S.Ct. at 1575. Five years later, in *Smith v. Murray*, 477 U.S. 527, 106 S.Ct. 2661, 91 L.Ed.2d 434

(1986), the Court reaffirmed this principle. In *Smith*, the defendant failed to establish cause because at the time of the default the claim was "available" since various forms of the claim "had been percolating in the lower courts for years at the time" of the defendant's original appeal. *Id.* at 537, 106 S.Ct. at 2667.

In view of *Ross, Engle* and *Smith*, we think it clear that Salberg failed to establish cause for his procedural default. The *Cheek* issue Salberg now raises was hardly novel at the time of his trial. At nearly the same time that Salberg was pursuing his trial and appeal, John Cheek, the tax protestor whose conviction we affirmed under the objectively reasonable standard, raised the same claim and then petitioned for a writ of certiorari in the Supreme Court. *Cheek*, 111 S.Ct. at 608. This was a plausible course of action given that our circuit stood alone in adhering to the "objectively reasonable" standard. In short, Salberg cannot now establish cause based on a claim that was available to him and that "other defense counsel had perceived and litigated." *Engle*, 456 U.S. at 134, 102 S.Ct. at 1575.

Next, Salberg argues that his *pro se* status excuses his procedural defaults. We have held in the past that "someone who chose to represent himself may not turn around and contend that he did not give himself the quality legal advice a lawyer could have supplied." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1386 (7th Cir. 1990). Other circuits have consistently held that this principle applies to *pro se* litigants in federal habeas proceedings. *See, e.g., Harmon v. Barton*, 894 F.2d 1268, 1275 (11th Cir.1990); *Hughes v. Idaho State Bd. of Corrections*, 800 F.2d 905, 908 (9th Cir.1986). Accordingly, we find that Salberg's *pro se* status does not excuse his procedural defaults.

Even if Salberg had established cause for his procedural defaults, his claim would still be barred because he failed to explain how he has been prejudiced by his failure to raise it either at trial or on direct appeal. In order to satisfy the prejudice prong, a petitioner must show "not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170, 102 S.Ct. at 1595 (emphasis original). Salberg never indicated that he intended to present a defense of good faith belief that he was not violating the law, nor did he object to the government's motion *in limine*. To the contrary, Salberg's own motion *in limine* preventing the government from introducing evidence as to his alleged beliefs suggests that his decision not to present such a defense was a conscious trial strategy. Even at this point, Salberg has yet to say *what* good faith beliefs he would have presented to negate willfulness. Thus, Salberg has failed to shoulder his burden of establishing actual prejudice.

### B. *Paperwork Reduction Act*

The Paperwork Reduction Act of 1980, 44 U.S.C. §§ 3501 *et seq.* (1988) (the PRA or the Act), was enacted in response to a concern that in its tireless quest for information, the federal bureaucracy was imposing an ever-increasing burden on citizens and small businesses. The PRA requires federal agencies to submit all "information requests" to the Office of Management and Budget (the OMB) for approval. Information requests include "tax forms, medicare forms, financial loan applications, job applications, questionnaires, compliance reports, and tax or business records." *Dole v. United Steelworkers*, 494 U.S. 26, 33, 110 S.Ct. 929, 933, 108 L.Ed.2d 23 (1990). If the Director of the OMB approves the information request, the Act requires that he assign it a control number. An agency may not attempt to collect information unless it has obtained the Director's approval along with a control number to display on the information request. 44 U.S.C. § 3507. If an agency's information request does not display an OMB number, "no person shall be subject to any penalty for failing to maintain or provide information" to the agency pursuant to the request. 44 U.S.C. § 3512.

Salberg contends that the district court lacked jurisdiction to penalize him because the form 1040 and the corresponding instruction books and regulations do not comport with the requirements of the PRA. Further, Salberg argues that the PRA issue cannot be waived because it is jurisdictional. We seriously doubt that this claim is jurisdictional. The district court certainly had jurisdiction under 18 U.S.C. § 3231 to entertain Salberg's prosecution for tax evasion and failure to file tax returns. *United States v. Koliboski*, 732 F.2d 1328, 1329 (7th Cir.1984). Regardless of the PRA claim, "a district court is not divested of jurisdiction it clearly had at the time of conviction to entertain a federal prosecution of an individual accused of a federal crime." *Bateman v. United States*, 875 F.2d 1304, 1306 n. 3 (7th Cir.1989) (per curiam). In any event, the PRA claim fails on its merits.[2]

▪ Salberg contends that although the form 1040 displays an OMB control number, it does not display an expiration date and thus does not comply with the Act. We agree with the district court that the failure to display an expiration date on the form does not violate the Act. Even if the PRA requires an expiration date, the form was expressly designated a "1981" tax return which is sufficient to satisfy such a requirement. *United States v. Collins*, 920 F.2d 619, 631 (10th Cir.1990).

▪ Next, Salberg argues that the relevant IRS regulations and the 1040 instruction books do not display OMB control numbers as required by the PRA. Salberg argues that since the regulations and instruction book, not the 1040 itself, require that the form be filed and they fail to comport with requirements of the PRA, he cannot be penalized for failing to file a tax return. Salberg relies on *United States v. Smith*, 866 F.2d 1092 (9th Cir.1989), in which the Ninth Circuit held that agency regulations were subject to the requirements of the PRA. *Id.* at 1098–99. The *Smith* court reversed a criminal conviction based on the defendant's failure to file an information request required by an agency

regulation because the regulation, not bearing a current control number, failed to comply with the PRA. *Id.* at 1099. However, the defendants in *Smith* were convicted of violating a regulation; Salberg was convicted of violating a statute. It was a federal statute—26 U.S.C. § 7203—not a regulation or an instruction book that required Salberg to file an income tax return. Statutes are not subject to the PRA and, as the government points out in its brief, every court that has considered the argument that the regulations and the instruction books promulgated by the IRS are within the scope of the PRA has rejected it. *See United States v. Kerwin*, 945 F.2d 92, 92 (5th Cir.1991) (per curiam); *United States v. Wunder*, 919 F.2d 34, 38 (6th Cir.1990); *Brewer v. United States*, 764 F.Supp. 309, 316 (S.D.N.Y.1991); *United States v. Karlin*, 762 F.Supp. 911, 912–13 (D.Kan.1991); *United States v. Crocker*, 753 F.Supp. 1209, 1214–16 (D.Del.1991). We do the same.

### III.

For the foregoing reasons, the judgment of the district court dismissing the petition for habeas corpus is Affirmed.

---

**2.** By its terms, the PRA only applies to information requests made after December 31, 1981, thus the Act can have no bearing on Salberg's conviction for failing to file an income tax return in 1980. 44 U.S.C. § 3512.