**Santee KIMES, Plaintiff–Appellant,**

v.

**UNITED STATES of America,
Defendant–Appellee.**

**No. 89–15970.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 14, 1991.

Decided July 24, 1991.

That complaint was justifiably cancelled under 29 C.F.R. § 1613.405(b).

Carl Ziemba, Detroit, Mich., for plaintiff-appellant.

Louise A. Lerner, Civil Rights Div., U.S. Dept. of Justice, Washington, D.C., for defendant-appellee.

Before SCHROEDER, PREGERSON and T.G. NELSON, Circuit Judges.

SCHROEDER, Circuit Judge:

Santee Kimes was convicted of various counts of involuntary servitude, transportation of illegal aliens, conspiracy, aiding and abetting and escape. She now appeals the district court's order denying her post-conviction motion to vacate that conviction under 28 U.S.C. § 2255. Her most important contention is that, because of a change in the interpretation of 18 U.S.C. § 1584, which prohibits holding another in involuntary servitude, the conduct for which she was convicted on the involuntary servitude counts is no longer illegal. *See United States v. Kozminski*, 487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988). She also alleges that she was denied a fair trial because of the presence on the jury of her neighbor, whom Kimes claims was biased. In this connection she further asserts that her attorney's failure to object to the service of this juror rendered his assistance ineffective. We affirm.

### Involuntary Servitude

At Kimes' trial, the government presented evidence that Kimes and her husband recruited young, female illegal aliens from Mexico to work for them as maids. The evidence showed that Kimes isolated these women, allowing them no contact with their families, no use of the mail or telephone, and virtually no contact with others. Kimes used locks and fences and threats of deportation to keep the victims from leaving the premises. In addition, she physically abused some of them.

The judge instructed the jury that to convict Kimes of holding these women in

involuntary servitude it had to find that she had kept the women in her employ through force or threat of force. He also told the jury that they could find that Kimes had held any victim in involuntary servitude if she caused that victim "to believe that she ha[d] no alternative but to perform the labor." The jury convicted Kimes of five counts of involuntary servitude, all of which involved women Kimes physically abused and/or threatened with abuse or deportation.

At the time of Kimes' trial, the law of the Ninth Circuit permitted a conviction for involuntary servitude where the means of compulsion used consisted of merely psychological coercion. *See United States v. Mussry*, 726 F.2d 1448 (9th Cir.), *cert. denied sub nom. Singman v. United States*, 469 U.S. 855, 105 S.Ct. 180, 83 L.Ed.2d 114 (1984). Subsequently, the Supreme Court announced that psychological coercion is not sufficient to bring a defendant's conduct within the purview of the statute forbidding involuntary servitude. Rather, the defendant must be guilty of bringing physical or legal coercion to bear on the victim. *United States v. Kozminski*, 487 U.S. 931, 108 S.Ct. 2751, 101 L.Ed.2d 788 (1988). Kimes contends that this change in the law renders the conduct for which she was convicted no longer criminal. She points out that the district court, in keeping with the law of the Ninth Circuit at the time, instructed the jury that it could convict her if she caused the victims to believe that they had no alternative but to serve her. Under *Kozminski*, such conduct would not be sufficient to support a conviction under the involuntary servitude statute.

■ In *Kozminski*, the government had relied in part on a theory that the Kozminskis had "brainwashed" their victims into remaining in their employ. *See* 487 U.S. at 936, 108 S.Ct. at 2756. It was this theory that the Court rejected. *Kozminski*, therefore, would require us to grant Kimes' section 2255 petition if she had been convicted based upon evidence of psychological coercion in addition to evidence of legal and physical coercion. *See Reed v. Ross*, 468 U.S. 1, 17, 104 S.Ct. 2901, 2911,

82 L.Ed.2d 1 (1984) (where Supreme Court decision represents a clear break from prior law, it can be a basis for a collateral attack on a prior conviction). Kimes' failure to object to the jury instruction is not fatal to her petition, since well settled law precluded her claim at the time. *Id.*

■ All of the evidence at Kimes' trial, however, was designed to demonstrate that she engaged in physical or legal coercion to keep the victims in her service. The government pursued no "brainwashing" theory of the type found inappropriate in *Kozminski*. Therefore, regardless of the instruction concerning the relevance of what the victims believed, the jury could not have convicted Kimes unless it concluded that she had engaged in "compulsion of services by the use or threatened use of physical or legal coercion," as required by *Kozminski*, 487 U.S. at 953, 108 S.Ct. at 2765. *Kozminski* was aimed at excluding prosecutions under the statute for psychological coercion of the type of which cults are often accused. Because there was no evidence of this type of psychological coercion presented, the instruction at issue could not have resulted in an unlawful conviction. *United States v. Frady*, 456 U.S. 152, 170, 102 S.Ct. 1584, 1595–96, 71 L.Ed.2d 816, *reh'g denied*, 456 U.S. 1001, 102 S.Ct. 2287, 73 L.Ed.2d 1296 (1982) ("[defendant] must shoulder the burden of showing, not merely that the errors at his trial created a *possibility* of prejudice, but that they worked to his *actual* and substantial disadvantage") (emphasis in original).

### The Alleged Biased Juror

Kimes also asserts that her conviction should be vacated because one juror was biased against her. This juror lived in Kimes' neighborhood, and Kimes now claims that she and the juror had altercations prior to the trial. During voir dire, this juror gave her true address, and answered in the negative when asked if she had ever met Kimes. Kimes participated in

the voir dire, but did not object to this juror or claim any prior relationship.

■ Because Kimes failed to challenge this juror at the time of trial, in order to prevail she must show cause for her failure to object and actual prejudice due to that juror's presence. *Graham v. Mabry,* 645 F.2d 603 (8th Cir.1981). *See Wainwright v. Sykes,* 433 U.S. 72, 86–87, 97 S.Ct. 2497, 2506–07, 53 L.Ed.2d 594, *reh'g denied,* 434 U.S. 880, 98 S.Ct. 241, 54 L.Ed.2d 163 (1977) (applying cause and prejudice test to the analogous contemporaneous objection rule applicable to evidentiary questions). Kimes claims that the cause for her failure to object to this juror was her mental state at the time of her trial. She asserts that, although she was present at voir dire, she was incapable of recognizing this juror as a person who was biased against her.

■ The district court held an evidentiary hearing at which it found that Kimes was sufficiently aware of the facts and sufficiently mentally competent at the time of voir dire to have acquiesced knowingly to the service of this juror. This finding, based in large part on the district court's determination of the credibility of witnesses who testified at the evidentiary hearing, cannot be rejected unless it is clearly erroneous. *Anderson v. Bessemer City,* 470 U.S. 564, 575–77, 105 S.Ct. 1504, 1512–13, 84 L.Ed.2d 518 (1985). There was no clear error here. Kimes has not met the cause prong of the test.

In addition, Kimes has not shown the prejudice that is necessary to allow her to pursue her claim. At the evidentiary hearing on Kimes' petition in the district court, the juror in question testified that she gave truthful information on voir dire. She stated that at some point during the trial she noticed that Kimes' address was in her neighborhood, but did not view this information as cause for alarm since she had never met Kimes and had previously disclosed her own address to the court. The judge found this testimony credible, and disbelieved the contrary testimony offered by Kimes. This finding was not clearly erroneous, and mandates the conclusion that this juror was not biased. Therefore, Kimes would not be entitled to a new trial based on this juror's service even if Kimes had cause for her failure to object.

■ Kimes' final contention is that she received ineffective assistance of counsel. She bases this claim on her attorney's failure to object to the service of the allegedly biased juror. To prevail on an ineffective assistance of counsel claim in a collateral attack, a petitioner must show that her attorney's "performance was deficient" and that this deficiency "prejudiced the defense." *Strickland v. Washington,* 466 U.S. 668, 687, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, *reh'g denied,* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). At the evidentiary hearing, the district court evaluated testimony concerning the amount of information Kimes' counsel had about the alleged bias of this juror, and ultimately believed the attorney's assertion that he did not have sufficient knowledge to believe that there was cause to object to this juror's serving on the jury. This factual finding was not clearly erroneous. The attorney's performance was therefore not deficient within the meaning of *Strickland v. Washington.* Furthermore, since the district court determined that the juror truthfully responded to questions that would have revealed any hostility toward or knowledge of the defendant, and there is no clear error in that determination, there could have been no prejudice in any event.

AFFIRMED.