Daniel ROSS, Appellant,

v.

Amos REED, etc. and Attorney General of the State of North Carolina, Appellees.

No. 82–6537.

United States Court of Appeals, Fourth Circuit.

Argued Dec. 6, 1982.

Decided March 31, 1983.

Rehearing Denied May 4, 1983.

---

Barry Nakell, School of Law, University of North Carolina, Chapel Hill, N.C., for appellant.

Richard N. League, Sp. Deputy Atty. Gen., Raleigh, N.C. (Rufus L. Edmisten, Atty. Gen. of North Carolina, Raleigh, N.C., on brief), for appellees.

Before WINTER, Chief Judge, ERVIN, Circuit Judge, and HAYNSWORTH, Senior Circuit Judge.

HAYNSWORTH, Senior Circuit Judge:

Because he had not presented his federal claims to the Supreme Court of North Carolina in the course of his direct appeal from his conviction of first degree murder, we summarily affirmed a denial of habeas corpus relief to this North Carolina prisoner under the principle of *Cole v. Stevenson,* 620 F.2d 1055 (4th Cir.) *en banc, cert. denied,* 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301 (1980). Thereafter, the Supreme Court vacated our judgment, 660 F.2d 492 (4th Cir.1981), and remanded the case for reconsideration in light of the intervening cases of *Engle v. Isaac,* 456 U.S. 107, 102 S.Ct. 1558, 71 L.Ed.2d 783 (1982), and *United States v. Frady,* 456 U.S. 152, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). *Ross v. Reed,* 456 U.S. 921, 102 S.Ct. 1963, 72 L.Ed.2d 436 (1982). We conclude that the cause and prejudice exception to the state procedural bar rule is present, requiring us to go to the merits of the claim. On the merits, the prisoner is entitled to relief.

I.

In March 1969 Ross was convicted of first degree murder in the slaying of his wife. There was some evidence that Ross had suffered a stab wound in the back of his neck, and Ross testified that his wife was armed with a knife, though that was contradicted by other witnesses. He claimed lack of malice, which would affect the degree of the offense, and sought complete exoneration on a claim of self-defense. In accordance with settled state law at the time, the trial judge instructed the jury that Ross had the burden of proving each of those defenses. The Supreme Court of North Carolina affirmed the conviction on October 15, 1969. *State v. Ross,* 275 N.C. 550, 169 S.E.2d 875 (1969).

More than five months after the decision of the North Carolina Supreme Court in *State v. Ross,* the Supreme Court of the United States decided *In re Winship,* 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). There it held that due process requires the prosecution to prove beyond a reasonable doubt every element of the offense charged. Later it was to decide *Mullaney v. Wilbur,* 421 U.S. 684, 95 S.Ct. 1881, 44 L.Ed.2d 508 (1975), in which it specifically held that in a murder case the burden is on the prosecution to prove beyond a reasonable doubt the absence of heat of passion or sudden provocation. In *Hankerson v. North Carolina,* 432 U.S. 233, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977), the *Mullaney* holding was held to have retroactive application.

Relying upon *Mullaney* and *Hankerson,* Ross unsuccessfully sought post-conviction relief in North Carolina's courts. He then filed in the district court a petition for a federal writ of habeas corpus. The district court held this case pending final conclusion of the litigation in *Cole v. Stevenson.* In

*Cole,* this court held in its six to three *en banc* decision that North Carolina's rule which barred post-conviction consideration of his federal claims respecting the burden of persuasion placed upon him by the trial judge's instructions also barred our consideration of those claims upon a petition for a federal writ of habeas corpus. 620 F.2d 1055 (1980). The Supreme Court denied a writ of certiorari in *Cole* with three justices noting their dissent. 449 U.S. 1004, 101 S.Ct. 545, 66 L.Ed.2d 301. The district judge then denied the Ross petition on the basis of the procedural bar, and we affirmed.

As indicated at the outset, the Supreme Court then vacated our judgment and remanded the case for reconsideration of the cause and prejudice exception to the rule of procedural bar as enunciated in *Engle v. Isaac* and *United States v. Frady.*

## II.

Ross has advanced two preliminary or alternative arguments.

First, he invites us to overrule or depart from the *en banc* decision of this court in *Cole v. Stevenson.* This panel of the court is bound by the *en banc* decision in *Cole* unless it is later supplanted by an *en banc* decision by this court or by a subsequent decision of the United States Supreme Court. It is true that in *Engle v. Isaac* the Supreme Court spoke of a state's interest in discouraging procedural defaults during trial proceedings, but a state has equivalent interests in discouraging procedural defaults during appellate proceedings. There is nothing in any decision of the Supreme Court subsequent to our *en banc* decision in *Cole* which would warrant this panel's now concluding that *Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977) should be confined to defaults occurring during trial proceedings.

Ross also contends that the rule of bar was waived by the North Carolina Supreme Court when it noticed the trial judge's instructions regarding the burden of proof during its opinion disposing of the direct appeal. The claim of waiver is not without

some support, but we find it unnecessary to delve behind the rather elusive language of the opinion in an attempt to determine precisely what was in the minds of the justices of the North Carolina Supreme Court when they wrote.

## III.

This case falls within the "cause and prejudice" exception as applied by the Supreme Court in *Engle* and *Frady.*

■ The state concedes that the prejudice prong is satisfied. Unlike the situation in *Frady,* there was testimony in this case that Ross reacted to an attack upon him by his estranged wife. According to his testimony, she approached him from the rear and stabbed him in the back of the neck, whereupon he whirled and fired two shots into the body of his knife-brandishing assailant. If the jury thought his defensive reaction to the attack upon him excessive, it well could have found him guilty only of manslaughter rather than first degree murder. There was some corroboration of Ross' testimony about the wound he suffered, so there is no room for speculation by us that the jury was so persuaded by the prosecution witnesses that no one of them entertained any doubt about their version of the event. Under these circumstances, the allocation of the burden of persuasion to Ross may well have influenced the jury in reaching a verdict of guilty of murder in the first degree.

■ We also conclude that there was cause for not having raised the claim.

In *Engle v. Isaac,* the Supreme Court left open the question whether novelty of the constitutional claim might ever constitute cause for not raising it, though it expressed its hesitance "to adopt a rule that would require trial counsel either to exercise extraordinary vision or to object to every aspect of the proceedings in the hope that some aspect might mask a latent constitutional claim." 456 U.S. at 133, 102 S.Ct. at 1574. It found no cause for the failure to object in the three consolidated cases before it, because the constitutional claims of the

three respondents "were far from unknown at the time of their trials."

The three respondents in *Engle* had been convicted of murder in separate trials in Ohio. Each had failed to object to an instruction placing the burden of persuasion of lack of malice upon him, and cause was asserted to lie in the fact that trial counsel in each case thought there was no constitutional basis for an objection to that allocation of the burden of persuasion. The Supreme Court rejected that assertion because each of the trials had occurred more than four years after its decision in *In re Winship*, 397 U.S. 358, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970), in which, in a different context, it was held that due process required the prosecution to prove every element of the offense beyond a reasonable doubt. The Supreme Court referred to a number of cases decided by other courts in the interim specifically supporting the constitutional claims of the *Engle* respondents. It concluded that trial counsel's lack of awareness of those recent developments in the law did not constitute cause for a failure to object.

Before us is the question left undecided by the Supreme Court in *Engle*, for Ross was tried and his conviction was affirmed before the Supreme Court's decision in *In re Winship*. Trial counsel did not have the benefit of that springboard from which to launch a constitutionally based objection to the charge and, on appeal, a claim of entitlement to a new trial.

The state contends that *Winship* was not the seminal decision in this area. It relies upon Footnote 39 in *Engle*:

Even before *Winship*, criminal defendants and courts perceived that placing a burden of proof on the defendant may violate due process. For example, in *Stump v. Bennett*, 398 F.2d 111 (CA 8), cert. denied, 393 U.S. 1001 [89 S.Ct. 483, 21 L.Ed.2d 466] (1968), the Eighth Circuit ruled en banc that an Iowa rule requiring defendants to prove alibis by a preponderance of the evidence violated due process. The court, moreover, observed: "That an oppressive shifting of the burden of proof to a criminal defendant vio-lates due process is not a new doctrine within constitutional law." *Id.*, at 122. See also *Johnson v. Bennett*, 393 U.S. 253 [89 S.Ct. 436, 21 L.Ed.2d 415] (1968) (vacating and remanding lower court decision for reconsideration in light of *Stump*); *State v. Nales*, 28 Conn.Supp. 28, 248 A.2d 242 (1968) (holding that due process forbids requiring defendant to prove "lawful excuse" for possession of house breaking tools).

456 U.S. at 131–32, 102 S.Ct. at 1573.

It is rare that a major decision, breaking with precedent, is not foreshadowed by straws in the wind. A hint here and there voiced in other contexts is not the explication of a broad principle offering a reasonable basis for a challenge to frequently approved jury instructions which had been used in North Carolina, and many other states, for over a century. *See State v. Hankerson*, 288 N.C. 632, 220 S.E.2d 575.

The Supreme Court in *Engle* was concerned with the consequence of procedural defaults during trial proceedings, and its reluctance to declare that novelty of the legal principle could never constitute cause for failure to object was made in the context of concern about the burden such a rule would impose upon trial lawyers and trial courts. The default here occurred in the appellate process. But if novelty is never cause for failure to raise the contention on appeal, the burden placed upon lawyers and appellate courts would be heavy. If novelty were never cause, counsel on appeal would be obliged to raise and argue every conceivable constitutional claim, no matter how far fetched, in order to preserve a right for post-conviction relief upon some future, unforeseen development in the law. Appellate courts are already overburdened with meritless and frivolous cases and contentions, and an effective appellate lawyer does not dilute meritorious claims with frivolous ones. Lawyers representing appellants should be encouraged to limit their contentions on appeal at least to those which may be legitimately regarded as debatable. In a criminal case, of course, a convicted defendant's lawyer must present

any contention his client wishes him to present, but he may do that without a representation of his own endorsement. A very novel constitutional claim is unlikely to spring from such a client.

*Wainwright v. Sykes,* 433 U.S. 72, 97 S.Ct. 2497, 53 L.Ed.2d 594 (1977), stated that the cause and prejudice exception was intended to provide for the adjudication of a claim which, in the absence of such adjudication, would result in a miscarriage of justice. In an absolute sense, no one can say that there was a miscarriage of justice in this case, for the jurors may have believed the prosecution witnesses beyond all reasonable doubt. On the other hand, no one can say that the verdict was not reached because the jurors placed the burden of persuasion upon the defendant rather than upon the state, just as they were instructed. Because the burdens of persuasion of his two defenses were placed upon him, Ross did not receive a fair trial. Such major unfairness in a trial is itself a miscarriage of justice.

Since the question was novel and since counsel had no reasonable basis for asserting the constitutional claim on appeal, we conclude that there was cause for the failure to present it on appeal as well as prejudice from the instruction itself.

## IV.

It is settled by the Supreme Court's decision in *Mullaney, supra,* that allocation to Ross of the burden of persuasion as to the lack of malice was in violation of his constitutional right. This court has also held that requiring him to bear the burden of persuasion on his claim of self-defense was also a violation of his constitutional right. *Wynn v. Mahoney,* 600 F.2d 448 (4th Cir.), *cert. denied,* 444 U.S. 950, 100 S.Ct. 423, 62 L.Ed.2d 320 (1979).

## V.

The judgment is reversed and the case remanded to the district court with instructions to issue a writ of habeas corpus unless, within a reasonable time, Ross is retried.

REVERSED AND REMANDED.