**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Joseph E. SHAMY,**
**Defendant–Appellant.**

**No. 88–7085.**

United States Court of Appeals,
Fourth Circuit.

Argued March 8, 1989.

Decided Oct. 5, 1989.

R. Stan Mortenson (Jay L. Alexander, Miller, Cassidy, Larroca & Lewin, Washington, D.C., on brief), for defendant-appellant.

Martin Stanley Himeles, Jr., Asst. U.S. Atty., New York City (Breckinridge L. Willcox, U.S. Atty., Washington, D.C., on brief), for plaintiff-appellee.

Before WIDENER and PHILLIPS, Circuit Judges, and DOUMAR, District Judge, for the Eastern District of Virginia, sitting by designation.

PER CURIAM:

This case comes to us on appeal from the district court's denial of appellant's motion pursuant to 28 U.S.C. § 1651 for a writ of error *coram nobis* vacating his conviction for mail and wire fraud and racketeering. Because we find that the indictment and jury instructions in this case allowed conviction on a theory of mail and wire fraud that is invalid under *McNally v. United States*, 483 U.S. 350, 107 S.Ct. 2875, 97 L.Ed.2d 292 (1987),[1] we vacate and remand this case to the district court with instructions to issue the writ.

Joseph Shamy was convicted in 1979 on three counts of mail fraud in violation of 18 U.S.C. § 1341, three counts of wire fraud

offense level of 24 would still give a sentence range of 51–63 months.

1. The mail and wire fraud statutes are coextensive with regard to the scope of coverage of fraudulent schemes. *United States v. Herron*, 825 F.2d 50 (5th Cir.1987). Therefore, if Shamy's mail fraud conviction must be vacated because it was based on an invalid legal theory, his wire fraud conviction also must be vacated because it was based on the same legal theory. Furthermore, the mail and wire fraud charges formed the predicate offenses cited in the indictment and jury instructions for Shamy's racketeering conviction. If these underlying charges are not valid under *McNally*, the racketeering conviction also must be vacated. *United States v. Mandel*, 862 F.2d 1067, 1074 (4th Cir.1988).

in violation of 18 U.S.C. § 1343, and one count of racketeering in violation of 18 U.S.C. § 1961 *et seq.* The conviction resulted from his dual involvement as legal counsel for the Laurel Harness Racing Association, Inc., and owner of Howard Construction Company, a construction firm hired to rebuild Laurel's racetrack facilities. Shamy, who at the time was a lawyer practicing in New Jersey, became involved in Laurel in 1975 when he and three of his clients purchased the majority of its outstanding shares. The Maryland Racing Commission approved the purchase, but only after extracting a pledge from the new owners to rebuild the racetrack's aging facilities. In 1976, Shamy sold his interest in Laurel. Four months later, however, he negotiated the purchase of the controlling shares for his wife's father, Daniel Rizk.

The Racing Commission approved Rizk's purchase but it insisted that new facilities be built within one year. Shamy agreed to rebuild the racetrack facilities and enlisted Joseph Sage, a retired general contractor, to supervise the project. In July 1976, Shamy, operating as Howard Construction Company, contracted to rebuild the facilities for more than $3.6 million. Shamy, who at that time served as Laurel's attorney and as a general agent for Laurel, did not reveal his ownership of the construction firm to the Maryland Racing Commission or others interested. See *United States v. Shamy*, 656 F.2d 951, 954–55 (4th Cir.1981), *cert. denied*, 455 U.S. 939, 102 S.Ct. 1429, 71 L.Ed.2d 649 (1982).

The government alleged that Shamy purposefully withheld the information in an effort to deceive the corporation's shareholders and profit at their expense. Based on these allegations Shamy was indicted for mail and wire fraud and racketeering. The indictment alleged that Shamy:[2]

devised and intended to devise a scheme and artifice

(a) To obtain directly and indirectly from Laurel and the stockholders of Laurel money, property, and other things of value, by means of false and fraudulent pretenses, representations, and promises, the defendants then well knowing that the pretenses, representations, and promises were false and fraudulent when made.

(b) To defraud Laurel and its stockholders of their right to the conscientious, loyal, faithful, honest, disinterested and unbiased services, decisions, actions and performances of duties of the defendants in their official capacity, including but not limited to, their duties as officers and agents of Laurel, free from willful omission, dishonesty, misconduct, fraud, and conflict of interest.

At trial, the court instructed the jury that Shamy should be found guilty if the government sustained its burden of proof on either of its two theories: that Shamy had diverted money from Laurel for his own use under false pretenses or that Shamy had deprived Laurel of its right to his loyal and faithful services. Shamy was convicted and initially sentenced to four years' imprisonment and fined $31,000. After this court affirmed his conviction on direct appeal in *United States v. Shamy*, 656 F.2d 951 (4th Cir.1981), the trial court reduced his sentence of imprisonment to five months and placed him on probation for a four-year period. Shamy has completed his sentence and probationary period. As a result of this conviction Shamy was disbarred by the New Jersey Supreme Court in 1983; he has not been reinstated.

Following the Supreme Court's 1987 decision in *McNally* and the Maryland district court's decision granting *coram nobis* relief in *United States v. Mandel*, 672 F.Supp. 864 (D.Md.1987) *aff'd United States v. Mandel*, 862 F.2d 1067 (4th Cir. 1988), cert. denied, —— U.S. ——, 109 S.Ct. 3190, 105 L.Ed.2d 699 (U.S. Jun. 19, 1989), Shamy petitioned for a writ of error *coram nobis* to vacate his conviction. The district court denied the writ for two reasons.

---

**2.** The indictment under which Shamy was convicted also included similar charges against his wife, Greta R. Shamy, and his father-in-law, Daniel Rizk. Mrs. Shamy served as president of the Laurel Harness Racing Association and Rizk served as chairman of the board of directors. The charges against Shamy were severed for separate trial.

First, the court stated that the writ should not issue because, unlike in *Mandel*, Shamy had not requested a jury instruction which would have avoided the conflict with *McNally*. Second, the court stated that there was sufficient deprivation of tangible property to sustain Shamy's conviction. The court reasoned that a stockholder's share in a corporation is a tangible thing of value, whose value is necessarily diminished by a corporate officer's breach of fiduciary duty involving self-dealing, especially where the corporate officer profits personally from such transaction.

We do not agree with the analysis of the district court which would sustain the conviction although both the indictment and the instruction to the jury permitted conviction for deprivation of "faithful and loyal services". Not only is this fact uncontradicted in the record, on the direct appeal of this case, we treated the conviction as one involving a deprivation of intangible rights. 656 F.2d at p. 957.

With one exception, all of the essential facts in this case are indistinguishable from those of *Mandel*. In this case, Shamy did not request a jury instruction consistent with *McNally*. We view this as a matter of insufficient consequence to bar the issuance of the writ. *Ingber v. Enzor*, 841 F.2d 450 (2d Cir.1988); see also *Ross v. Reed*, 704 F.2d 705, 708–09 (4th Cir.1983), aff'd. 468 U.S. 1, 104 S.Ct. 2901, 82 L.Ed.2d 1 (1984).

In view, then, of *McNally* and our decision in *Mandel*, the judgment of the district court must be vacated and the case remanded with instructions to issue the prayed for writ of error *coram nobis*.

VACATED AND REMANDED WITH INSTRUCTIONS.