2020 IL App (3d) 190356

Opinion filed August 14, 2020

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2020

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of the 21st Judicial Circuit, Kankakee County, Illinois, |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | Appeal No. 3-19-0356 Circuit No. 04-CF-541 |
| JOHN J. COLASURDO, | ) ) ) | Honorable Clark E. Erickson, |
| Defendant-Appellant. | ) | Judge, Presiding. |

JUSTICE CARTER delivered the judgment of the court, with opinion.
Justices Holdridge and Schmidt concurred in the judgment and opinion.

**OPINION**

¶ 1        Defendant, John J. Colasurdo, appeals following the second-stage dismissal of his

successive postconviction petition. On appeal, he argues that the Kankakee County circuit court

lacked jurisdiction over him when he was charged with an offense committed while he was 14

years old. Alternatively, defendant argues that he was sentenced in contravention of *Miller v.*

*Alabama*, 567 U.S. 460 (2012), and its progeny, requiring vacatur of his sentence. We affirm in

part, reverse in part, and remand for further proceedings.

¶ 2                                    I. BACKGROUND

¶ 3         On July 29, 2004, the State filed a delinquency petition in which it alleged that defendant had committed the criminal offense of first degree murder (Ill. Rev. Stat. 1989, ch. 38, ¶ 9-1(a)(1), (a)(2), (a)(3)). The petition alleged that, on February 20, 1990, defendant stabbed Helen Correll with a knife, causing her death. Defendant was 14 years old at the time of the alleged offense and 29 years old when the State filed its delinquency petition.

¶ 4         After defendant waived his right to a hearing on the matter, the case was transferred to criminal court. The State subsequently filed an indictment charging defendant with four counts of first degree murder, all relating to the death of Correll. Nearly three years later, on June 29, 2007, defendant filed a motion to vacate his transfer from juvenile court, alleging that he had been mentally unfit at the time of his waiver and that his rights had not been adequately explained to him. With no objection from the State, the circuit court ordered a new transfer hearing in juvenile court. Following that hearing, the court once again permitted the State to try defendant as an adult.

¶ 5         Defendant proceeded to a jury trial, after which the jury found him guilty on all counts. The jury also found that Correll's death was accompanied by exceptionally brutal or heinous behavior indicative of wanton cruelty. A sentencing hearing was held on July 1, 2008. The report of proceedings from that hearing has not been included in the record in the present appeal. The sentencing order, however, shows that the circuit court sentenced defendant to a term of natural life imprisonment. Defendant filed a motion to reconsider sentence on the basis that, *inter alia*, "[d]efendant was only fourteen years old at the time of the murder." The docket sheet indicates that the court denied that motion.

¶ 6 On direct appeal, defendant argued that the circuit court had not made a proper inquiry into his posttrial claims of ineffective assistance of counsel. This court rejected that argument and affirmed defendant's conviction and sentence. *People v. Colasurdo*, No. 3-08-0662 (2010) (unpublished order under Illinois Supreme Court Rule 23).

¶ 7 On June 2, 2011, defendant filed his first petition for postconviction relief. In his petition, defendant alleged, *inter alia*, that his sentence amounted to cruel and unusual punishment. Defendant argued that a term of natural life without the possibility of parole was cruel for "[a] youth that is still growing and learning from his/her mistakes, that cannot make the right decisions or speak out for themselves." Defendant also raised a number of complaints regarding the performance of one of his trial attorneys.

¶ 8 The circuit court denied defendant's petition at the first stage of proceedings. In a written order, the court indicated that defendant had failed to support his ineffectiveness claims with affidavits or other evidence and that he had not "clearly set forth how his constitutional rights were violated." The written order made no reference to defendant's eighth amendment claim. Defendant did not appeal the denial of his petition.

¶ 9 On February 22, 2013, defendant filed a motion for leave to file a successive postconviction petition, as well as the proposed petition itself. Among the arguments raised in the successive petition, defendant contended that he was sentenced in contravention of *Miller*. He further alleged that the circuit court had failed to consider his age at the time of the offense at sentencing. As cause for his failure to raise that claim in his original postconviction, defendant pointed out that *Miller* had been decided by the United States Supreme Court on June 25, 2012. Elsewhere in his petition, defendant noted the principle that a void judgment may be attacked at any time.

3

¶ 10 The circuit court denied defendant's motion for leave. In the memorandum accompanying its judgment, the court found that defendant "could have raised any of his claims in his original post-conviction petition." The memorandum did not discuss *Miller*, nor defendant's claim that *Miller* provided cause for not raising that particular claim earlier.

¶ 11 This court reversed the circuit court's judgment denying defendant leave. We observed that the cause and prejudice rule for successive postconviction petitions did not apply where a defendant raises a voidness challenge. *People v. Colasurdo*, 2015 IL App (3d) 130341-U.

¶ 12 On remand, the circuit court appointed counsel to represent defendant, advancing his petition to the second stage of postconviction proceedings. Appointed counsel filed an amended petition seeking vacatur of defendant's sentence and a new sentencing hearing pursuant to *Miller*.

¶ 13 Defendant subsequently filed a motion to dismiss counsel and proceed *pro se*. When that motion was granted, defendant filed a *pro se* amended successive postconviction petition. In his amended petition, defendant argued that his indictment had been "legally defective because this Court did not have the authority to render judgment convicting [defendant] nor authority to transfer him." More specifically, defendant asserted that the State was not authorized to prosecute an adult for a crime committed by a juvenile. Defendant also continued to argue that the sentencing court had not considered the factors required by *Miller*. Specifically, defendant alleged that the sentencing court had not considered "his youth, characteristics, and the fact that most youth change."

¶ 14 Defendant attached to his amended petition portions of the report of proceedings from his sentencing hearing. The excerpted pages begin as the court is detailing defendant's criminal history. After noting that defendant had been the victim of violence as a child, the sentencing

4

court opined: "[T]here's no question in my mind that you're a very violent person." The court also remarked: "You also show a total lack of remorse, a total lack of acceptance or responsibility." The court then, citing defendant's criminal history and the "risk [of defendant] being released and harming somebody else in the future," sentenced defendant to a term of natural life imprisonment.

¶ 15     The State filed a motion to dismiss defendant's amended petition. The State urged that defendant's life sentence had been discretionary, unlike the mandatory life sentence at issue in *Miller*. The State also asserted that the sentencing court "took into consideration the defendant's full and complete history and appropriately utilized discretion."

¶ 16     Defendant subsequently filed a second amended successive petition. That petition was substantially similar to the first, but added a reference to *People v. Buffer*, 2019 IL 122327.

¶ 17     The circuit court dismissed defendant's amended successive petitions on May 13, 2019. In a written opinion, the court rejected defendant's jurisdictional claim, observing that recent supreme court opinions had definitively established that a person over the age of 21 may be tried in criminal court for a crime committed as a minor. The court also rejected defendant's *Miller* claim, finding that *Miller* concerned mandatory life sentences—whereas defendant's life sentence was discretionary—rendering *Miller* inapplicable to defendant. The court found *Buffer* inapplicable as well, stating:

> "In *Buffer*, the Supreme Court found a sentence of 40 years imposed upon a minor for 1st degree murder to be a *de facto* life sentence. *Buffer* clearly does not apply to the defendant's case as the defendant was sentenced to an actual life sentence, not a fixed number of years as in *Buffer*."

Defendant appeals the circuit court's ruling.

¶ 19        Defendant, proceeding as a self-represented litigant, raises two arguments on appeal. First, he argues that jurisdiction in criminal court was lacking because defendant was a juvenile at the time of his offense. Second, he argues that his sentence was unconstitutional under *Miller*. Among the relief requested by defendant for these errors is a request that the order granting the State's motion to dismiss be reversed and the matter remanded for further proceedings.

¶ 20        Before addressing defendant's contentions in full, we must address the procedural posture of the case. The Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2018)) provides a three-stage process for the adjudication of postconviction petitions. *People v. Boclair*, 202 Ill. 2d 89, 99 (2002). At the first stage, a defendant must only state the "gist" of a constitutional claim, and the petition may only be dismissed if it is frivolous and patently without merit. *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). If a petition is advanced to the second stage of proceedings, counsel will be appointed, and the State may then file a responsive pleading. *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001); 725 ILCS 5/122-4 (West 2018).

¶ 21        At the second stage, a defendant must make a substantial showing of a constitutional violation. *People v. Pendleton*, 223 Ill. 2d 458, 473 (2006). "At the second stage of proceedings, all well-pleaded facts that are not positively rebutted by the trial record are to be taken as true ***." *Id.* If a defendant makes the required substantial showing, the petition will be advanced to a third-stage evidentiary hearing. *Edwards*, 197 Ill. 2d at 246.

¶ 22        Following this court's remand in the present case, the circuit court appointed counsel for defendant, and the State filed a motion to dismiss the petition. The court granted that motion to dismiss without holding an evidentiary hearing or otherwise advancing defendant's petition to the third stage. Thus, it is clear that defendant's amended successive petitions were dismissed at

the second stage of postconviction proceedings. We review the circuit court's second-stage dismissal of a postconviction petition *de novo*. *Pendleton*, 223 Ill. 2d at 473

¶ 23                                 A. Circuit Court Jurisdiction

¶ 24        Defendant first argues that his conviction is void because the criminal court did not have jurisdiction over him for an offense committed when he was 14 years old. He also argues that the juvenile court was without jurisdiction to order a transfer because defendant was well over 21 years of age when he appeared in that court.

¶ 25        Defendant's claim of voidness is refuted by our supreme court's decision in *People v. Fiveash*, 2015 IL 117669. The defendant in *Fiveash* was 23 years old when he was charged via criminal court indictment with offenses committed when he was 14 or 15 years old. *Id.* ¶ 3. The defendant successfully moved for dismissal on the grounds that the exclusive jurisdiction provision of the Juvenile Court Act of 1987 barred his prosecution in criminal court. *Id.* ¶¶ 6-7 (citing 705 ILCS 405/5-120 (West 2004)).

¶ 26        The supreme court found the dismissal erroneous, holding that the exclusive jurisdiction provision acted only to prevent persons under the age of 21, and not falling under any exception, from being tried in criminal court. *Id.* ¶ 16. More simply, the circuit court had jurisdiction over the 23-year-old defendant regarding offenses committed when he was 14 or 15 years old. *Id.* The court noted that the defendant, had he been tried as a juvenile, would still have been subject to a potential transfer to criminal court based on his age at the time of the offense. *Id.* ¶ 19 (citing 705 ILCS 405/5-805(3) (West 2004)). The *Fiveash* court also pointed out that the defendant's theory, under which neither juvenile nor criminal court would have jurisdiction over him, "creates a strong and perverse incentive for juvenile offenders to take affirmative action to conceal their

offenses or to evade apprehension until they turn 21 and would no longer be subject to prosecution." *Id.* ¶ 22.

¶ 27    Under *Fiveash*, the criminal court in this case had proper jurisdiction over defendant. Like the *Fiveash* defendant, defendant here could have been transferred from juvenile to criminal court had proceedings commenced while he was a minor. Ill. Rev. Stat. 1989, ch. 37, ¶ 805-4(3)(a). Moreover, defendant's prosecution in criminal court 14 years after his offense did not present any limitations issues, as there is no statute of limitations for first degree murder. 720 ILCS 5/3-5(a)(1) (West 2004). As the circuit court had jurisdiction over defendant, it follows that defendant's voidness challenge must fail.

¶ 28    We recognize that while the circuit court had jurisdiction over defendant in criminal proceedings, it did *not* have jurisdiction to commence juvenile proceedings. See 705 ILCS 405/1-2 (West 2004). Any proceedings on the State's delinquency petition then, such as the two transfers of defendant to criminal court, are void for want of jurisdiction. However, any issues relating to those transfers are moot, as criminal proceedings against defendant were independently commenced via grand jury indictment, just as they were commenced against the defendant in *Fiveash*, 2015 IL 117669, ¶ 5. Indeed, as the State points out, in being granted a full transfer hearing to which he was not entitled, defendant was actually provided with greater due process than that required by law. Accordingly, we affirm the circuit court's dismissal of defendant's amended successive petition with respect to defendant's jurisdictional or voidness claim.

¶ 29                                    B. *Miller*

¶ 30        Defendant next argues that he is entitled to a new sentencing hearing under *Miller* and its

progeny. While defendant's argument is largely couched in terms of a request for ultimate relief,

he also requests, more generally, a remand for further proceedings in the circuit court.

¶ 31        The State makes no substantive argument concerning defendant's eligibility for *Miller*

relief. Rather, it raises two separate procedural grounds for why this court should not entertain

defendant's claim. First, it argues that the record defendant has provided on appeal is

insufficient, which requires us to affirm the circuit court's judgment. Second, the State contends

that defendant's *Miller* claim could have been raised on direct appeal and is therefore forfeited.

¶ 32        In 2005, the United States Supreme Court held in *Roper v. Simmons*, 543 U.S. 551, 578

(2005), that the imposition of the death penalty on offenders who were under 18 at the time of

their offense amounted to cruel and unusual punishment under the eighth amendment. That

holding was based largely on the "general differences between juveniles under 18 and adults,"

such as an underdeveloped sense of responsibility and a greater susceptibility to negative

influences in youth. *Id.* at 569.

¶ 33        Seven years later, the Court decided *Miller*. In that case, the Court held that the

imposition of a mandatory life sentence for a juvenile offender was also in contravention of the

eighth amendment. *Miller*, 567 U.S. at 489. Notably, the Court did not find that such a sentence

was cruel and unusual *per se*. Rather, it was the mandatory nature of the sentence—which

foreclosed the court from considering the characteristics mentioned in *Roper*—that rendered

such a sentence unconstitutional. *Id.* at 477-78.

¶ 34        In *People v. Davis*, 2014 IL 115595, ¶ 39, our supreme court held that *Miller* created a

new substantive rule, such that it should be applied retroactively. The United States Supreme

9

Court subsequently reached the same decision. *Montgomery v. Louisiana*, 577 U.S. ___, 136 S. Ct. 718 (2016). The *Davis* court further found that the prior unavailability of a *Miller* claim constituted "cause" for the failure to raise such a claim in an earlier postconviction petition for purposes of the Act's cause and prejudice test for successive petitions. *Davis*, 2014 IL 115595, ¶ 42; 725 ILCS 5/122-1(f) (West 2012). Thus, under *Davis*, a *Miller* claim may be raised for the first time in a successive postconviction petition where the first postconviction petition predated *Miller*.

¶ 35        Following *Davis*, our supreme court extended the scope of *Miller* in a series of three cases. In *People v. Reyes*, 2016 IL 119271, ¶ 10, the court held that the imposition of a mandatory, *de facto* life sentence required the necessary *Miller* considerations at sentencing in order to pass constitutional muster. The next year, in *People v. Holman*, 2017 IL 120655, ¶ 40, the court held that "[l]ife sentences, whether mandatory or discretionary, for juvenile defendants are disproportionate and violate the eighth amendment, unless the trial court considers youth and its attendant characteristics." Finally, in *Buffer*, 2019 IL 122327, ¶ 27, the court combined its holdings in *Reyes* and *Holman*, finding that the rationale of *Miller* applies to any "life sentence, mandatory or discretionary, natural or *de facto*." The *Buffer* court created a bright line for determining what constituted a *de facto* life sentence, drawing that line at 40 years' imprisonment. *Id.* ¶ 40.

¶ 36        The imposition of any of the types of sentences contemplated above thus requires special considerations at sentencing. The precise requirements of the sentencing court were best set out by our supreme court in *Holman*:

> "Under *Miller* and *Montgomery*, a juvenile defendant may be sentenced to life imprisonment without parole, but only if the trial court determines that the

10

defendant's conduct showed irretrievable depravity, permanent incorrigibility, or irreparable corruption beyond the possibility of rehabilitation. The court may make that decision only after considering the defendant's youth and its attendant characteristics. Those characteristics include, but are not limited to, the following factors: (1) the juvenile defendant's chronological age at the time of the offense and any evidence of his particular immaturity, impetuosity, and failure to appreciate risks and consequences; (2) the juvenile defendant's family and home environment; (3) the juvenile defendant's degree of participation in the homicide and any evidence of familial or peer pressures that may have affected him; (4) the juvenile defendant's incompetence, including his inability to deal with police officers or prosecutors and his incapacity to assist his own attorneys; and (5) the juvenile defendant's prospects for rehabilitation." *Holman*, 2017 IL 120655, ¶ 46. In order to prevail on his *Miller* claim and attain a new sentencing hearing, then, a defendant must show that (1) he was under 18 years of age when the offense in question was committed; (2) a life sentence, mandatory or discretionary, natural or *de facto*, was imposed; and (3) the sentencing court failed to consider his youth and its attendant characteristics or failed to find that he was "beyond the possibility of rehabilitation." *Id.*; *Buffer*, 2019 IL 122237, ¶ 27.

¶ 37    In the present case, there is no dispute that defendant was a juvenile when he committed first degree murder, and his discretionary natural life imprisonment falls plainly within the ambit of *Holman*, and thus *Miller*. Moreover, defendant alleged in his successive petition that the sentencing court had not satisfied the *Miller* requirements. He also attached to his petition the pages of his sentencing hearing leading up to the court's decision, which did not contain any

11

reference to the "characteristics of youth" or any finding that defendant was permanently beyond rehabilitation. See 725 ILCS 5/122-2 (West 2018).

¶ 38    The State argues that the record on appeal is insufficient for us to address defendant's claim and that this insufficiency must be construed against defendant. Indeed, the report of proceedings of neither sentencing nor any hearing on defendant's motion to reconsider sentence have been included in the appellate record. The State points out that the circuit court may have considered the characteristics of youth and made the required findings in either of those portions of the record, and it is impossible for this court to determine otherwise on the record before us.

¶ 39    It is well settled that "an appellant has the burden to present a sufficiently complete record of the proceedings at trial to support a claim of error." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 391-92 (1984). Any doubts arising from the incompleteness of the appellate record must be construed against the appellant. *Id.* at 392. The State is correct in one sense: We may not grant defendant full relief in the form of a new sentencing hearing based upon the record before us. Without the full record of sentencing and of a potential hearing[1] on defendant's motion to reconsider sentence, we cannot determine whether the *Miller* requirements were satisfied.

¶ 40    The State's argument, however, ignores the procedural posture of the case. Defendant's successive petition was dismissed at the second stage of proceedings. At this stage, defendant's factual allegations must be taken as true unless affirmatively rebutted by the record. *Pendleton*, 223 Ill. 2d at 473. As defendant has alleged that the sentencing court failed to consider the characteristics of youth, and that allegation is not rebutted by the record, we assume it to be true. *Foutch* does not stand for the proposition that a reviewing court must affirm every time any

---

[1]Without the benefit of the record, we cannot even determine whether there *was* any sort of formal hearing on defendant's motion.

12

portion of a trial record is not included on appeal. Rather, an appellant need only include those portions of the record necessary "to support a claim of error." *Foutch*, 99 Ill. 2d at 391-92. Because we assume defendant's allegations to be true at this stage, defendant does not need the full record to support his claim that his petition should have been advanced to the third stage. To be sure, if the full record were to show that the sentencing court had complied with *Miller*, we would affirm the dismissal of defendant's amended petition. We note that the State was free to procure the missing reports of proceedings and seek leave to supplement the appellate record in order to make such a showing, but it elected not to do so. See, *e.g.*, *People v. Cunningham*, 2012 IL App (3d) 100013, ¶ 10.

¶ 41    The State next argues that defendant forfeited his *Miller* claim by not raising it on direct appeal. See, *e.g.*, *People v. English*, 2013 IL 112890, ¶ 22 ("Issues that were raised and decided on direct appeal are barred by *res judicata*, and issues that could have been raised on direct appeal, but were not, are forfeited."). This court decided defendant's direct appeal in 2010, two years before *Miller* and seven years before *Holman*, the case that extended *Miller* to apply to discretionary life sentences. Nevertheless, the State argues that defendant's claim was available to him as early as 2005, when the United States Supreme Court recognized in *Roper* that juveniles must be subject to special considerations at sentencing.

¶ 42    We reject the State's forfeiture argument because it is contrary to our supreme court's holding in *Davis*. The *Davis* court held that there was good cause for failing to raise a *Miller* claim before *Miller* was decided, namely, "because it was not available earlier to counsel." *Davis*, 2014 IL 115595, ¶ 42. The United States Supreme Court, in addressing the federal cause and prejudice test, has explained the rationale for excusing the "failure" to raise previously unavailable claims:

13

"[I]f we were to hold that the novelty of a constitutional question does not give rise to cause for counsel's failure to raise it, we might actually disrupt state-court proceedings by encouraging defense counsel to include any and all remotely plausible constitutional claims that could, some day, gain recognition. ***

'If novelty were never cause, counsel on appeal would be obliged to raise and argue every conceivable constitutional claim, no matter how far fetched, in order to preserve a right for post-conviction relief upon some future, unforeseen development in the law.' " *Reed v. Ross*, 468 U.S. 1, 15-16 (1984) (quoting *Ross v. Reed*, 704 F.2d 705, 708 (4th Cir. 1983)).

¶ 43    While the State argues forfeiture, rather than invoking the cause and prejudice test, the rationale remains the same. If the failure to raise a *Miller* claim in postconviction proceedings prior to *Miller* should be excused, it follows that the failure to raise such a claim on direct appeal must also be excused. In fact, the rationale actually applies with even greater force, as a defendant's direct appeal would be even further removed in time from *Miller* than his postconviction proceedings.

¶ 44    The circuit court imposed upon defendant a discretionary sentence of natural life imprisonment for an offense committed when defendant was 14 years old. To comport with the eighth amendment, such a sentence must be preceded by a consideration of the characteristics of youth and a finding of permanent incorrigibility. *Holman*, 2017 IL 120655, ¶ 46. Per defendant's unrebutted allegations, which we take as true at the second stage of postconviction proceedings, the court did not meet those requirements. Accordingly, we find that defendant has made a substantial showing that his sentence was unconstitutional, such that his amended successive petition should be advanced to the third stage of proceedings.

¶ 45 In closing, we recognize that the nature of defendant's claim does not require substantial fact-finding or credibility determinations, which are largely the purpose of the third-stage evidentiary hearing. See *Pendleton*, 223 Ill. 2d at 473. Resolution of defendant's *Miller* claim at the third stage does not call for any witness testimony and will likely consist of nothing more than the circuit court conducting a thorough review of the reports of proceedings to determine if the original sentencing court met the requirements of *Miller*.

¶ 46                                   III. CONCLUSION

¶ 47 The judgment of the circuit court of Kankakee County is affirmed in part, reversed in part, and remanded for further proceedings.

¶ 48 Affirmed in part and reversed in part.
¶ 49 Cause remanded.

**No. 3-19-0356**

| | |
|---|---|
| **Cite as:** | *People v. Colasurdo*, 2020 IL App (3d) 190356 |
| **Decision Under Review:** | Appeal from the Circuit Court of Kankakee County, No. 04-CF-541; the Hon. Clark E. Erickson, Judge, presiding. |
| **Attorneys for Appellant:** | John James Colasurdo, of Pontiac, appellant *pro se*. |
| **Attorneys for Appellee:** | Jim Rowe, State's Attorney, of Kankakee (Patrick Delfino, Thomas D. Arado, and Nicholas A. Atwood, of State's Attorneys Appellate Prosecutor's Office, of counsel), for the People. |