**IN THE SUPERIOR COURT OF THE STATE OF DELAWARE**

STATE OF DELAWARE      )
                                      )
                                      )      I.D. No. 1808022193
    v.                            )
                                        )
KENNETH APPIAH,       )
                                        )
        Defendant.        )

Submitted:  March 3, 2025
Decided:  May 30, 2025

## <u>ORDER</u>

***On Defendant's Motion for Post Conviction Relief – SUMMARILY DENIED***
***On Defendant's Motion Requesting Expansion of the Record – DENIED***
***On Defendant's Motion for Appointment of Counsel – DENIED***

On this 30 day of May, 2025, having considered Defendant's Motion for Postconviction relief,[1] Motion for Appointment of Counsel,[2] Motion Requesting Expansion of the Record,[3] and the entire record in the case, it appears to the Court that:

1.      Appiah was charged with Home Invasion, Burglary First Degree, five counts of Possession of a Firearm During the Commission of a Felony (hereinafter "PFDCF"), Attempted Robbery First Degree, three counts of Reckless Endangering

---

[1] Superior Court Criminal Docket, ID No. 1808022193, Docket Item ("D.I.") 165.
[2] D.I. 166.
[3] D.I. 167.

First Degree, and Criminal Mischief following a December 13, 2017, shooting at the home of Appiah's former roommate, Aruna Kanu.[4]  The facts of this case are as found by the Delaware Supreme Court in Appiah's direct appeal of his conviction:

> (2) Aruna Kanu, his girlfriend Aimee Kamara, and their son rented an apartment in Newark, Delaware. They sub-let a second bedroom in the apartment to Appiah. Appiah paid Kanu a security deposit and received two keys to the apartment. After living in the apartment for only two weeks of the agreed seven-month rental term, Appiah told Kanu that he accepted a job in Philadelphia and left the apartment. Kanu refused to return Appiah's security deposit after Appiah moved out. After Appiah left, Kanu rented the apartment's spare bedroom to Ricardo Campbell. Appiah never returned the two keys to the apartment. Appiah unsuccessfully tried to involve the police to get the security deposit back. Appiah also continued to text and email Kanu demanding his security deposit. In a final October 16, 2017 text, Appiah told Kanu "you need to stop playing with me."
>
> (3) On December 13, 2017, Kanu, Kamara, and their son were home at the apartment when a man in a black outfit and black mask entered the apartment using a key and pointed a gun at Kanu and gestured like he was demanding money. Kanu went into the bedroom, shut the door, and yelled for Kamara to call 911. While Kanu was on the floor, the man shot two times through the bedroom door. The gunshots did not hit anyone but damaged the child's crib. At trial, Kanu testified that the man was Appiah.
>
> (4) Appiah fled the apartment before police arrived. Police collected two spent .32 caliber shell casings from outside the bedroom door and projectiles from the baby's crib and the wall. An officer's body camera from the night of the incident showed an officer going into Campbell's room, saying that the room smelled like drugs, and pointing out a drug scale and drug packaging.
>
> (5) Police interviewed Appiah that night but did not arrest him. Appiah was wearing black clothes when the police conducted the interview.

---

[4] *State v. Appiah*, 2019 WL 6647806, at *1 (Del. Super. Nov. 26, 2019); D.I. 52.

Two days later, police interviewed Appiah again. He admitted that he owned a .32 caliber handgun. Police arrested Appiah, seized the gun, and had the gun tested. A forensics expert testified that the shell casings from the apartment were consistent with having come from Appiah's gun, though the examiner could neither identify nor eliminate the projectiles as having been fired from Appiah's gun.

(6) The State charged Appiah with Home Invasion, Burglary in the First Degree, five counts of Possession of a Firearm during the Commission of a Felony, Attempted Robbery in the First Degree, three counts of Reckless Endangering in the First Degree, and a misdemeanor count of Criminal Mischief. After a three-day trial, a Superior Court jury convicted Appiah of all charges, except Home Invasion and instead of Attempted Robbery in the First Degree, of the lesser-included offense of Aggravated Menacing. The Superior Court judge sentenced Appiah to seventeen years at Level V, followed by probation.[5]

2.       Prior to sentencing, on March 26, 2019, Appiah filed a *pro se* Motion for New Trial.[6]  The motion was rejected, per policy, as Appiah was represented by Counsel.[7]  Appiah then re-filed a Motion for New Trial, now through Counsel, alleging the prosecutorial misconduct due to remarks made in closing concerning the ballistics analysis.[8]  That motion was denied on November 26, 2019.[9]  Appiah was thereafter sentenced on January 10, 2020, to a total of seventeen (17) years of unsuspended Level V time.[10]

---

[5] *Appiah v. State*, 224 A.3d 681 (TABLE), 2020 WL 7625353, *1-2 (Del. Supr. Dec. 20, 2020) (internal citations omitted).
[6] D.I. 38.
[7] *Id;* D.I. 39.
[8] D.I. 44.
[9] *See Appiah*, 2019 WL 6647806.
[10] D.I. 69.

3. On January 23, 2020, Appiah appealed his convictions. In his direct appeal, he argued his Sixth Amendment rights were violated when the Superior Court denied his last-minute request for new trial counsel, that the Superior Court erred in various evidentiary rulings.[11] The Supreme Court affirmed Appiah's conviction, finding no error.[12]

4. On February 5, 2021, Appiah filed his first *pro se* Motion for Postconviction Relief.[13] On February 10, 2021, he filed a Motion for Appointment of Counsel.[14] Prior to any ruling, on March 11, 2021, Appiah amended his *pro se* Motion for Postconviction Relief.[15] In it, he raised five claims, including ineffective assistance of counsel claims related to Appiah's alibi defense.[16] Appiah contended Counsel should have requested an identification instruction and incident reports/body-worn camera footage of the officers who initially reported to Appiah's residence before another officer arrived to check out Appiah's alibi.[17]

---

[11] D.I. 53.

[12] *See Appiah*, 2020 WL 7625353. The ruling also affirmed the Superior Court's denial of Appiah's requests to proceed *pro se*, one made the week before trial and the other on the second day of trial; D.I. 78.

[13] D.I. 80. This Motion was later amended. *See* D.I. 81; D.I.108.

[14] D.I. 79.

[15] D.I. 81.

[16] *Id.*

[17] *Id.*

5. On April 26, 2021, the Court granted Appiah's request for counsel and issued an Order for Appointment of Counsel pursuant to Rule 61(E)(2).[18] Postconviction Counsel was appointed, but ultimately moved to withdraw following a "thorough review of the record" failed to reveal any meritorious postconviction claims.[19] The Motion to Withdraw was later granted in Court's August 28, 2023 Memorandum Opinion Denying Appiah's motion for Postconviction Relief.[20]

6. On August 15, 2022, before the Court issued a decision on the pending motions, Appiah filed his second Motion for Postconviction relief, *pro se*.[21] In this motion, Appiah raised ten (10) grounds for relief, one of which alleged Counsel was ineffective for failing to request a *Lolly/Deberry* instruction for "missing evidence." Appiah claimed an instruction on missing evidence was necessary because the police did not seek a DNA comparison between the shell casings found in Kanu's apartment and a black glove allegedly found outside Kanu's apartment.[22]

7. On August 18, 2022, the Court issued an Order Directing Expansion of the Record and, because Appiah's second postconviction motion raised additional ineffective assistance of counsel claims, ordered trial counsel and appellate counsel

---

[18] D.I. 84.
[19] D.I. 97.
[20] D.I. 139.
[21] D.I. 95, 96, 108. Postconviction counsel was afforded an extension of the filing deadline.
[22] *Id.*

to file affidavits in response to the specific claims against them, respectively.[23] Both Affidavits were subsequently filed.[24]

8. Prior to a ruling on his second postconviction relief motion, Appiah filed a *pro se* "Motion Seeking DNA and Gunshot Residue Testing of Evidence, Rule 61 Discovery," on December 8, 2022.[25]

9. Given the "increasingly convoluted record in light of Appiah's Third and Fourth Postconviction Filings," the Court held a teleconference.[26] The Court indicated it would construe Appiah's additional *pro se* filings as responses to Postconviction Counsel's Motion to Withdraw and requested Postconviction Counsel address why two of Appiah's newly raised claims lacked merit.[27] Upon receipt of the requested response, the Court issued a Postconviction Scheduling Order on March 7, 2023.[28]

10. On August 28, 2023, the Court denied Appiah's Motion for Postconviction Relief, finding "[h]is ineffective assistance of counsel claims do not

---

[23] D.I. 109 and 110. The Order was corrected on August 25, 2022 to correct a scrivener's error.
[24] D.I. 116 and 121.
[25] D.I. 113.
[26] *State v. Appiah*, 2023 WL 5608927, at *6 (Del. Super. Aug. 28, 2023); D.I. 139.
[27] *Id.* The requested response was filed on January 27, 2023.
[28] D.I. 124.

demonstrate that Trial or Appellate Counsel were objectively unreasonable. His Due Process claims are similarly meritless."[29]

11.    Appiah appealed the Court's decision on September 21, 2023.[30] On April 16, 2024, the Delaware Supreme Court affirmed the Superior Court's judgment.[31]

12.    In the summer of 2024, Appiah resumed his filings in Superior Court: on June 10, 2024, Appiah filed a letter requesting access to the suspect glove for DNA testing;[32] on July 11, 2024, Appiah filed a Motion for Modification of Sentence;[33] and on July 22, 2024, Appiah filed a Motion to Compel a response to his June 10th letter.[34] Both his Motion to Compel and Motion for Modification were denied.[35] Appiah's letter seeking access to the glove was deemed moot because the Court had already mailed Appiah the 2022 forensic report and addendum.[36]

---

[29] D.I. 139.
[30] D.I. 141.
[31] D.I. 146. The Delaware Supreme Court's Order read, "[a]fter consideration of the parties' briefs and the record on appeal, we find it evident that the judgment below should be affirmed on the basis of and for the reasons cited by the Superior Court in its August 28, 2023, memorandum opinion denying the appellant's first motion for postconviction relief."
[32] D.I. 147.
[33] D.I. 148.
[34] D.I. 149.
[35] D.I. 160.
[36] Id; D.I. 158. Appiah filed a Reply following the Court's Order, which was also deemed moot based on the Court's November 1, 2024 Order denying the pending motions.

13.     On August 9, 2024, Appiah filed a *pro se* Petition for Writ of Habeas Corpus.[37]  This Petition was denied on August 13, 2024.[38]

14.     On September 19, 2024, Appiah filed a Writ of Mandamus requesting the Court require the State to provide Appiah with access to the suspect glove, DNA swabs, and gunshot residue tests.[39]  The Court denied his Writ on October 28, 2024, reasoning the issue presented had already been raised and denied in Appiah's Motion for Postconviction Relief.[40]  The denial was later affirmed by the Delaware Supreme Court.[41]

15.     Most recently, on January 23, 2025, Appiah filed a *pro se* Motion for Leave of the Court to File a *Brady* Claim.[42]  On April 16, 2025, the Court denied this Motion because "Appiah's request seeks to address a matter previously decided by the Court on multiple occasions."[43]

---

[37] D.I. 150.

[38] D.I. 153.

[39] One Mandamus, Case Number N24M-09-102, Trans ID 74365737 (Sept. 19, 2024).

[40] Order Upon Initial Review of Complaint is Dismissed, Case Number N24M-09-102, Trans ID 74883400 (Oct. 28, 2024).

[41] *Id.*

[42] D.I. 163.

[43] D.I. 170.  By the time of this decision, the original judge retired and a new judge was assigned to decide his motion.

16.    On March 3, 2025, Appiah filed the instant *pro se* Motion for Postconviction Relief under Superior Court Criminal Rule 61(d)(2)(i), a Motion for Appointment of Counsel, and a Motion Requesting Expansion of the Record.[44]

## Motion for Postconviction Relief

17.    Beginning with Appiah's Postconviction Motion, he sets forth two grounds for relief. Appiah first contends his due process rights were violated because "[p]olice collected two shell casens, [sic] a bullet and a black glove from the crime scene. On postconviction Appiah requested but denied access to the glove for DNA and gunshot residue testing to prove innocence under Del Rule 61(d)(2)(i)."[45] Appiah also brings an ineffective assistance of counsel claim for trial counsel's failure to call witnesses who Appiah contends would have corroborated his alibi.[46]

18.    Superior Court Criminal Rule 61 governs motions for postconviction relief. Before addressing the merits of a postconviction motion, the Court must examine whether any of the Rule 61 procedural bars apply.[47] A motion for postconviction relief can be procedurally barred as untimely, repetitive, for failing to raise a claim in the proceedings leading to the judgment of conviction, and for

---

[44] D.I. 165, 166, and 167. Appiah's instant motions were reassigned to yet another judge.
[45] D.I. 165.
[46] *Id.*
[47] *Younger v. State*, 580 A.2d 552, 554 (Del. 1990).

being formerly adjudicated.[48] An applicable procedural bar precludes a reviewing court from addressing the merits of a Rule 61 claim, to "protect the procedural integrity" of the Court Rules.[49]

19.     The Court has engaged in the preliminary consideration of Appiah's current application under Rule 61.  Consistent with Rules 61(i)(3) and (i)(4), Appiah's claims are procedurally barred.  Accordingly, his motion is summarily dismissed.  His current Ground One has been previously adjudicated and barred pursuant to Rule 61(i)(4), and Rule 61(i)(3) bars Appiah's Ground Two, as he could have, but failed to raise this claim in an earlier proceeding and has not presented excusal for his failure to do so in his motion.

20.     Summary dismissal is appropriate if it plainly appears from the motion for postconviction relief and the record of prior proceedings in the case that the movant is not entitled to relief."[50]  It plainly appears from Appiah's motion, after reviewing the entirety of the record and prior proceedings in this case, that he is not entitled to relief.

---

[48] Super. Ct. Crim. R. 61(i)(1)-(4).

[49] *State v. Page*, 2009 WL 1141738, at \*13 (Del. Super.); *see also State v. Chao*, 2006 WL 2788180, at \*5 (Del. Super. Sept. 25, 2006) ("to protect the integrity of the procedural rules, the Court should not consider the merits of a postconviction claim where a procedural bar exists").

[50] *State v. Reed*, 2024 WL 2746694 at \*2, citing Sup. Ct. Crim. R. 61(d)(5).

21. Rule 61(i)(4) provides "[a]ny ground for relief that was formerly adjudicated, whether in the proceedings leading to the judgment of conviction, in an appeal, in a postconviction proceeding, or in a federal habeas corpus proceeding, is thereafter barred."[51]

22. Ground One argues Appiah was denied "Due Process of Law under Brady and under Del. const. art I. §7" because a black glove allegedly recovered near the crime scene was not tested for DNA and gunshot residue.[52] This argument has been raised and denied on numerous occasions.[53] In fact, this Court previously ruled:

> [a]s to the gunpowder residue – the State did not have a duty to collect and preserve gunpowder residue under Rule 16 because the State did not intend to use it in its case-in-chief, and the record does not show that gunpowder reside was material to the preparation of Appiah's defense. Nor did the State have a duty to collect and preserve gunpowder residue under *Brady*, because the State had no reasons to believe it would have been exculpatory. The remainder of Appiah's 'missing evidence' argument fails because there is no duty to test evidence.[54]

23. The Court's 2023 analysis controls here. Further, this Court has already denied Appiah's January 23, 2025 *pro se* motion again requesting relief on the basis that the black glove was not tested, because Appiah "seeks to address a matter

---

[51] Super. Ct. Crim. R. 61(i)(4).
[52] D.I. 165.
[53] D.I. 170.
[54] *Appiah*, 2023 WL 5608927, at *11.

previously decided by the Court on multiple occasions."[55] The Court will not address the same evidentiary issue again. Therefore, Appiah's Ground One is procedurally barred under 61(i)(4) and no further analysis is required.

24. Ground Two of Appiah's Motion for Postconviction Relief contends Counsel was ineffective for failing to properly investigate his alibi.[56] Specifically, Appiah asserts "Appiah told police that he was at home helping his children with their homework…At trial, counsel failed to call Appiah's children to testify in support of Appiah's alibi defense."[57] This Ground is also procedurally barred.

25. Rule 61(i)(3) states that any ground for relief "not asserted in the proceedings leading to the judgment of conviction" is procedurally barred unless the movant can show "cause for relief from the procedural default" and "prejudice from [the] violation of the movant's rights."[58]

26. Appiah does not show cause for relief from the procedural default or prejudice from the violation of his rights to justify considering the merits of his argument. To date, Appiah has filed four prior motions seeking various kinds of postconviction relief.[59] Within those motions, Appiah raised more than ten

---

[55] D.I. 163 and 170.
[56] D.I. 165.
[57] *Id.*
[58] Super. Ct. Crim. R. 61(i)(3); *see also Reed*, 2024 WL 2746694, *1.
[59] D.I. 80, 81, 108, and 113.

ineffective assistance of counsel claims, some of which involved his alibi defense.[60] Any further claims Appiah brings alleging Trial Counsel was ineffective for inadequately pursuing his alibi defense, such as failing to call Appiah's children as witnesses, should have been brought in an earlier proceeding. Appiah failed to do so and provides no explanation for why the instant argument was not included in an earlier proceeding.

27. Appiah has not shown the required prejudice to excuse this procedural default. To excuse the default, Appiah must demonstrate a substantial likelihood that, had he raised the instant ineffective claim earlier, the outcome of his case would have been different; that had he asserted the challenge, "he might not have been convicted." [61] Appiah has not made the requisite showing. In fact, it appears this Court and the Delaware Supreme Court have afforded Appiah ample opportunity to address the plethora of post-trial issues raised; none have been fruitful. Since his conviction in March of 2019, Appiah has filed a motion for new trial, directly appealed his sentence, filed numerous motions and letters with the Court seeking postconviction relief, submitted a Petition for Writ of Habeas Corpus, and filed a

---

[60] *Appiah*, 2023 WL 5608927, at \*5. Appiah alleged Counsel was ineffective for "not requesting incident reports and body-worn camera footage of all officers who reported to Appiah's residence before Officer Przeworski arrived to check out Appiah's alibi."

[61] *Flamer v. State*, 585 A.2d 736, 748 (Del. 1990), *citing Reed v. Ross*, 468 U.S. 1, 12 (1984).

Writ of Mandamus. All were unsuccessful. Given the exhaustive record in this case, and in the interest of preserving the integrity of Rule 61's procedural bars, the Court will not address the merits of Appiah's fourth postconviction filing.[62] Thus, Appiah's Motion for Postconviction relief is summarily denied, and no further analysis is necessary.

### Motion for Expansion of the Record

28. In denying Appiah's Motion for Postconviction relief, his current Motion to Expand the Record becomes moot. Rule 61(g)(1) permits the Court to expand the record to include additional materials relevant to the determination of the merits of the motion.[63] Given that Appiah's postconviction request is denied, no additional materials are necessary. Appiah's motion once again requests access to the glove and additional DNA testing on the basis that "this Court denied Appiah's Motion for Postconviction Relief and Motion Seeking Access to DNA and gunshot residue on the suspect glove," in its August 28, 2023 Memorandum Opinion.[64]

29. Appiah's request continues that he "twice requested but [was] denied access to the suspect glove, sample swabs collected from the shell casens [sic] for DNA and gunshot residue testing to prove actual innocence," and asks "the Court

---

[62] *Chao*, 2006 WL 2788180, at *5.
[63] Super. Ct. Crim. R. 61(g)(1).
[64] D.I. 167.

direct the State to expand the record and include any materials and test results relevant to the merits of Appiah's postconviction claim."[65]

30. As already discussed, Appiah's motion is moot. Further, the Court declines to grant Appiah's request for the same reasons outlined in the August 28, 2023 Opinion: the State does not have a duty to test evidence or to seek out exculpatory evidence.[66] The State's duty to preserve exculpatory evidence does not require the State to run additional testing, outside of what is necessary for its case-in-chief, that *might* reveal exculpatory evidence.[67] Therefore, Appiah's repetitive request seeking access to the glove for further testing is **DENIED**.

**Motion for Appointment of Counsel**

31. Finally, Appiah's Motion for Appointment of Counsel is also denied. When a defendant files a second or subsequent motion under Rule 61, this Court may appoint counsel for an indigent defendant ***only*** if the judge determines the second or subsequent motion satisfies the pleading requirements of Rule 61(d)(2).[68] To meet the requirements of Rule 61(d)(2), a defendant must plead with particularity (i) that new evidence exists that creates a strong inference that the defendant actually is innocent of the charges of which he was convicted; or (ii) that a new rule of

---

[65] D.I. 167.
[66] *Appiah*, 2023 WL 5608927, at n.186 (citing *Coleman v. State*, 289 A.3d 619, 627 (Del. 2023)).
[67] *Coleman*, 289 A.3d at 627.
[68] Super. Ct. Crim. R. 61(e)(5).

constitutional law, made retroactive to cases on collateral review by the United States Supreme Court or the Delaware Supreme Court, applies to Appiah's case and renders the conviction invalid.

32. Appiah's Motion for Counsel does not plead either of these two elements. While Appiah contends DNA and gunshot residue tests on the recovered glove will reveal his innocence, nothing in the record substantiates that belief. In fact, the record indicates testing the glove was immaterial to preparing Appiah's defense. Because Appiah failed to create a strong inference that he is innocent of his crimes, and because the Court is unaware of any new rule of law rendering his conviction invalid, Appiah's Motion for Appointment of Counsel is **DENIED**.[69]

**IT IS SO ORDERED.**

_____
Danielle J. Brennan, Judge


cc:     Matthew Bloom, Deputy Attorney General
        Kenneth Appiah, _Defendant_

---

[69] _Appiah_, 2023 WL 5608927, at *11; D.I. 134.